## GOODGAME v. CLIFTON.

1. When a purchase made by a ward, of his former guardian, is attacked for fraud, the former may show, that he was advised in the State of Georgia, to come to Alabama, and secure the debt by a purchase of the slaves in controversy; and that he did come in a few days, and make the purchase, for the purpose of explaining the transaction, and the motives which prompted the purchase.

2. In construing a bill of exceptions, a particular expression, " as that there

was no evidence of any indebtedness," if repugnant to other statements in the bill, will be understood to mean, that there was no *positive* proof of indebtedness.

Error to the Circuit Court of Dallas.    Before the Hon. John Bragg.

Trial of the right of property, in which the plaintiff in error was claimant.    From a bill of exceptions, it appears, that the defendant in execution, was appointed guardian of the claimant, in the State of Georgia, in 1835, and that on 19th April, 1844, about two years after the claimant attained his majority, the slaves in question were sold by the former guardian, to the claimant, and a bill of sale executed for them, the consideration expressed in it being $1,200.    It was proved, that at the time of the sale, notes from the defendant in execution to the claimant were delivered up.    The bill of exceptions proceeds to state, that there was evidence, that at the death of claimant's father, he was entitled to some property, but it was not shown that it came to the hands of the guardian, or whether there was any indebtedness from him to the claimant, on account of the guardianship, at the time of the sale.    There was also testimony tending to show, that the sale was fraudulent.

The claimant introduced a witness, who testified, that early in the year 1844, he went to the State of Georgia, and there saw the claimant, and from what he had heard in Alabama, advised him to return with witness to Alabama, and endeavor to secure his debt against the defendant in execution, by a purchase of the slaves in controversy.    That he did come to Alabama with the witness, for that purpose, and in a few days after reaching this state, made the purchase. On motion of the plaintiff, the court excluded this testimony from the jury, to which he excepted, and which is the matter now assigned as error.

Evans, for the plaintiff in error.

1. The only error assigned is the exclusion of the testimony of the witness, Bates.    The testimony offered was

relevent and competent, and highly important, as tending to show the *animus* of the claimant, in making the purchase. The precise point is decided in the case of Goodgame v. Cole & Co. at the December term, 1846, and which, with the authorities there cited, is referred to here to support the assignment.

CHAMBERLAYNE, for defendant in error.

The case at bar presents two questions for the consideration of this court; first, will the court reverse for an abstract error in law, by which the rights of the appellant could not have been prejudiced? Second, is this a case of that character?

The first point has been so frequently determined by this court, that it is only necessary to refer to them. See Heath v. Patton, 2 Stew. 38; 1 Ala. Rep. 517, 582; 5 Ib. 258. These, and other cases determined by this court, establish the principle, that the court will not reverse a case, unless appellant shows affirmatively, that there is error by which he has been prejudiced.

This brings us to the consideration of the second question presented by the record.

The case of Goodgame v. Cole & Co. at a former term of this court, is relied on by the counsel for the appellant as decisive of this case. On examination of that case it will be found that the facts of it are materially different from those in the case at bar; and that the law of that case is, so far as it is applicable to the case at bar, against a reversal. There is but one point common to the two cases, that is, the advice of the witness, Bates, which was excluded by the court.

CHILTON, J.—The isolated question presented by the record is, whether the claimant should have been permitted to prove by the witness, Bates, the advice which the witness gave him in the State of Georgia, viz: that he should return to Alabama with the witness, and endeavor to secure his indebtedness by a purchase of the slaves in controversy, from the defendant in the execution, and that he did return

74

Goodgame v. Clifton.

with the witness, and in a few days thereafter made the purchase. The plaintiff in the execution insisted there was fraud in the purchase of the slaves, and the bill of exceptions informs us there was some proof conducing to show the fact. It then became necessary for the claimant to explain the transaction, and the motives which prompted the purchase. Was there a debt justly due him from his guardian, W. B. Goodgame, which the circumstances required him to secure? Was he advised of these circumstances, and did he act on the advice, and incur labor and expense in travelling from the State of Georgia to Alabama to arrange the business, which, according to our experience of men's conduct, do not ordinarily accord with the idea that the purchase was a collusive arrangement made to delay and defraud creditors? These, and the like inquiries were proper for the jury, and proof pertinent to them should not have been excluded. It is however insisted, that although the exclusion of the evidence offered to be made by the witness, Bates, may have been erroneous, still this court should not reverse, as the plaintiff in error has not been prejudiced, there being no proof, as is insisted, of consideration for the sale from W. B. Goodgame to the claimant. The facts set out in the bill of exceptions show, that the purchase was made by the claimant of his guardian, some two or three years after he had attained his majority. That the consideration was the extinguishment of certain notes then held by claimant against W. B. G., for twelve hundred dollars, which at the time of sale were delivered up. That the father of claimant, upon his death, left property, to a distributive share of which the claimant was entitled, and that pending the claimant's minority, the defendant in the execution became his guardian, viz: in the year 1835. The claimant, during his minority, was not entitled to receive the property left by his deceased father, and his guardian was the proper custodian of his effects. It was his duty to have reduced the ward's property to possession, and to have made it valuable. If he discharged his duty, he was liable to his ward for the prooperty—if he failed to discharge it, by which the property was lost to the ward, he is equally liable for the consequences of such failure; so that we are not prepared to say, that the state-

ment in the bill of exceptions, " that there was *no evidence* of any indebtedness from the defendant in execution to the claimant, on account of said guardianship," is a legitimate sequence from the facts therein stated. But we construe the bill of exceptions to mean, there was no direct or positive testimony on the subject, as otherwise it would be repugnant.

We come then to the conclusion, that as the advice given by the witness, Bates, to the claimant, which induced him to come from the State of Georgia to Alabama, was competent to show the intention with which he came, and the motive which incited him to make the journey, and as its exclusion *may* have prejudiced the claimant, that the circuit court erred in not admitting it.

The view which we have taken as to the admissibility of the testimony of the witness, Bates, accords with the views expressed by this court, upon a case very analagous to the one at bar, and in which such proof was held admissible. See Goodgame v. Cole & Co. 12 Ala. 77.

Let the judgment be reversed and the cause remanded.