(85 South. 375)
**SEWELL v. NOLEN BANK et al.**
(5 Div. 730.)

(Supreme Court of Alabama. Jan. 22, 1920.
Rehearing Denied Feb. 12, 1920.)

**1. Usury ⬳115—Parol evidence admissible.**

Though several mortgages showed on their face that they were given for the principal sums actually advanced as loans, with interest from date, the court, in suit to declare the final mortgage usurious and for an accounting, could go behind the contract so expressed; parol or extrinsic evidence being admissible to show the contract was usurious in its inception.

**2. Usury ⬳117—Payment and receipt of usurious interest evidence of usurious contract.**

The payment and receipt of usurious interest is prima facie evidence of a prior usurious contract.

**3. Usury ⬳88—Renewal of usurious obligations did not purge debt.**

Renewal of obligations to pay mortgage debt, as embodied in final note and mortgage, did not purge the debt of its taint of usury, present in the inception of the transaction; the renewed obligation, so far as founded on usurious interest previously charged, being without consideration, and unenforceable as between the parties to the usurious contract.

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. Bills and notes ⬯497(2)—Holder could meet burden as to usury by showing purchase for value in due course.**

In suit to declare note and mortgage usurious, the note being a negotiable instrument, though the rule of pleading required the holder to aver that she acquired the paper in good faith and without notice of usury, she could meet the burden by showing she was a purchaser for value and in due course, when the burden shifted to complainant maker to show the holder had notice or its equivalent.

**5. Evidence ⬯75—Failure to produce evidence creates suspicion.**

In action for accounting and to redeem from a mortgage claimed to be usurious, where cross-complainant, seeking foreclosure of the mortgage, claimed to be an innocent purchaser for value, and where important evidentiary facts were in the keeping of cross-complainant, the failure to produce them or to account for their absence cast suspicion on the bona fides of her claim.

**6. Bills and notes ⬯497(2) — Evidence for holder insufficient to meet burden to show lack of notice of usury.**

In suit to declare note and mortgage usurious, and for an accounting, evidence for holder of the mortgage note *held* insufficient to meet the burden of proof resting on her that she purchased for value and in due course without notice, so that she was not entitled to relief on her cross-bill.

Appeal from Circuit Court, Tallapoosa County; S. L. Brewer, Judge.

Bill by J. H. Sewell against the Nolen Bank and others to declare a note and mortgage usurious and for an accounting. From decree for respondents, complainant appeals. Reversed, rendered in part, and remanded.

James W. Strother and J. Percy Oliver, both of Dadeville, for appellant.

The contract falls within the purview of section 4623, Code 1907, and equity has jurisdiction. 180 Ala. 76, 60 South. 101; 161 Ala. 407, 49 South. 860; 145 Ala. 264, 41 South. 84. A mere renewal does not purge the usury. 200 Ala. 672, 77 South. 46. Notice to one partner as to any matter of business within the partnership is notice to all the partners. 99 Ala. 12, 11 South. 738; 64 Ala. 74; 62 Ala. 302. As to what constitutes a bona fide purchaser without notice, under circumstances as here, see 76 South. 949; 71 Ala. 75; 105 Ala. 471, 18 South. 178; 101 Ala. 405, 13 South. 263; 99 Ala. 18, 11 South. 738; 57 Ala. 12.

Barnes & Walker, of Opelika, and George A. Sorrell, of Alexander City, for appellees.

The note and mortgage were negotiable, and the indorsee was a holder in due course. Sections 4985 and 5007–5014, Code 1907. The negotiation carried the mortgage security. 117 Ala. 468, 23 South. 157. Usury cannot be asserted against a bona fide purchaser for value. Section 5012, Code 1907; 120 Ala. 9, 23 South. 829. Under the facts in this case, the burden was on complainant to show knowledge in the indorsee. 9 Ala. App. 352, 63 South. 741; 195 Ala. 175, 70 South. 723. The legatee here could be a bona fide purchaser. 155 Ala. 495, 46 South. 582; 77 Ala. 262; 100 Ala. 617, 13 South. 659; 69 Ala. 385; 30 Ill. 30, 81 Am. Dec. 340; 62 Mich. 579, 29 N. W. 499.

BROWN, J. This bill is by appellant, J. H. Sewell, against Mary E. Nolen, Roy L. Nolen, Leon A. Nolen, Lessie N. Adams, S. J. Nolen, Jr., Marie N. Potts, Helen N. Bell, Thurston H. Nolen, and Jack Nolen, a partnership doing business as the Nolen Bank, in Alexander City, Ala., praying for an accounting, and seeking to redeem from a certain mortgage executed by complainant to the Nolen Bank on the 31st day of January, 1916, for $3,000, in renewal and as additional security for alleged pre-existing debts—constituted largely, if not entirely, of usurious interest.

The answer of the Nolen Bank, the partnership composed of the persons above named, sets up that at the time of the execution of the mortgage the Nolen Bank was owned and being conducted by Roy L. Nolen and S. J. Nolen, Jr., as the survivors of the partnership composed of S. J. Nolen, Sr., now deceased, and Roy L. and S. J. Nolen, Jr.; and that, before the formation of the present partnership, they, in due course and for value, transferred said mortgage and the note thereby secured to Marie N. Potts—and the partnership as now constituted disclaims any interest in or to the mortgage or the debt thereby secured.

The respondent Marie N. Potts by her separate answer, adopting in part the answer of the Nolen Bank, avers that—

"Said promissory note is made payable to the Nolen Bank or bearer, and is a negotiable instrument under the laws of Alabama. This respondent avers that on December 1, 1916, said note was delivered to her for a valuable consideration, to wit, the sum of $3,200 paid on said date; that at the time of the said negotiation of said instrument to this respondent she was a bona fide purchaser for value and had no notice of said alleged usurious interest included in said instrument; and that the complainant at the time of the filing of the bill of complaint was, and is now, indebted to this respondent in the sum of $3,000, with interest from January 31, 1916."

She thereupon prays that her answer be taken and considered a cross-bill, and that the mortgage be foreclosed.

On final hearing, on pleadings and proof, the court dismissed the original bill; and holding that the respondent Marie N. Potts

was a "bona fide purchaser for value," of the indebtedness represented by the note and mortgage executed by complainant to the "Nolen Bank" on January 31, 1916, granted relief under her cross-bill and decreed a fore-closure of the mortgage. The purpose of this appeal is to review this decree.

The salient facts developed by the evidence in the case are that, prior to 1908, S. J. No-len, Sr., now deceased was in the banking, loan, and advancing business in Alexander City, as "S. J. Nolen, Banker," at which time he changed the style of his business to the "Nolen Bank," and at some time prior to his death, in May, 1915, associated with him his two sons Roy L. and S. J. Nolen, Jr.; but, as expressed by S. J. Nolen, Jr., testifying as a witness in this case S. J. Nolen, Sr., owned "practically all of it" (the bank) at the time of his death.

The matters involved in this litigation origi-nated in an advance or loan of $500 by the Nolen Bank to the complainant on the 18th day of January 1908, to secure which com-plainant and his wife executed to the Nolen Bank a mortgage for $500, "with interest from date," covering a house and lot in Alex-ander City and other property, and on ac-count of which a charge against complainant was entered on the books of the bank for $574.55.

It is not disputed that, on the debt secured by this mortgage, complainant for the years including 1908 and 1915 paid the sum of $62.-50 annually as interest.

On March 1, 1909, the bank made another loan to complainant of $1,572.10, to enable him to pay off a mortgage to the British-American Mortgage Company and one Porch, to secure which complainant and his wife ex-ecuted to the bank a mortgage for the sum of $1,572.10, "with interest from date." It is likewise admitted that for the years 1909 to 1915, inclusive, complainant paid annually as interest on this indebtedness $196.50, and that no payments were made or credited on the principal of either mortgage.

During these years complainant and his son were engaged in farming operations, and obtained from the Nolen Bank advances from year to year, securing the same by mortgages on the crops to be grown from year to year, and other personal property. The cotton grown by complainant and his son during these years, after it was gathered and baled, was placed in a warehouse and the ware-house receipts turned over to the bank. The cotton was sold by the bank, and the pro-ceeds thereof applied from time to time to the payment of interest on the two land mort-gages, as well as the principal and interest on the crop mortgages up to and including the crops of 1915. The balance due on these loans and advancements was carried from year to year, and new or additional security given in the form of renewal mortgages.

The evidence, we think, clearly tends to the conclusion—and in fact it is not seriously de-nied—that interest at a rate greater than the legal rate was charged on these several loans and advancements.

On the 31st day of January, 1916, the un-paid balances, as shown by the books of the bank—on the mortgage of January 18, 1908, $500, and the mortgage of March 1, 1909, $1,-572.10, and the several crop mortgages being combined—amounted to $3,000; and on that date complainant executed to the bank the mortgage against which he seeks relief in this case.

[1] The several mortgages showing on their face that they were given for the prin-cipal sums actually advanced as loans "with interest from date," the appellees contend that this precludes the court from going be-hind the contract therein expressed, and that parol or extrinsic evidence is not admissible to show that the contract was usurious in its inception. To hold that the usurer, by the mere subterfuge of taking a paper as a se-curity for a loan, which on its face is not usurious, can preclude the borrower—whom it is the purpose of the law to protect—from going behind this subterfuge, and showing the contract is in fact usurious, would amount to a nullification of the statute. As said by this court in a recent case:

"There is no device or shift on the part of the lender to evade the statute under or be-hind which the law will look in order to as-certain the real nature of the transaction." Blue v. First National Bank of Elba, 200 Ala. 129, 75 South. 577; Lewis v. Hickman, 200 Ala. 672, 77 South. 46; 39 Cyc. 1052 (B) 1.

[2] It is not necessary to look to the testi-mony of the complainant, given as a witness in his own behalf, to determine that the mortgages of January 18, 1908, and of March 1, 1909, were usurious in their inception. "The payment and receipt of usurious inter-est is prima facie evidence of a prior usuri-ous contract." Webb on Usury, 482, § 419; 39 Cyc. 1053 (III).

Moreover, the testimony of J. T. Sewell, which is not disputed, clearly established the fact that the agreement between his father and the bank, made with S. J. Nolen, Sr., was to pay 12½ per cent. interest on the loans of January 18, 1908, and March 1, 1909.

[3] The renewal of the obligations to pay the debt, as embodied in the note and mort-gage of January 31, 1916, did not purge the debt of its taint of usury, and, in so far as the renewed obligation is founded on usuri-ous interest previously charged, it is without consideration, and cannot be enforced as be-tween the parties to the usurious contract. Dismukes v. Weed's Ex'rs, 82 South. 24;[1] Lewis v. Hickman, supra; Blue v. First Na-tional Bank of Elba, supra.

---

[1] 203 Ala. 64.

[4] This brings us to a consideration of the question which, as appears from the face of the decree, was of controlling importance in casting the result of the litigation in the trial court; that is, Does the evidence show that the respondent Marie N. Potts, the complainant in the cross-bill, acquired the note and mortgage of January 31, 1916, as a purchaser in due course for value, and without notice? The note in question being a negotiable instrument, although the rule of pleading required her to aver that she acquired the paper in good faith, and without notice that the debt was tainted with usury, yet she may meet and carry this burden of proof by showing that she was a purchaser for value and in due course. Slaughter v. First National Bank, 109 Ala. 157, 19 South. 430; German-American Bank v. Lewis, 9 Ala. App. 352, 63 South. 741; Sherrill v. M. & M. Trust & Savs. Bank, 195 Ala. 175, 70 South. 723. The burden then shifted to the complainant to show that she had notice, or its equivalent —that she had knowledge of facts sufficient to excite inquiry, which, if followed up, would have brought knowledge to her that the debt was tainted with usury. Alexander v. Fountain, 195 Ala. 3, 70 South. 669; Street v. Treadwell, 203 Ala. 68, 82 South. 28.

To sustain the burden which the law placed upon her, she relied solely on the testimony of the witness S. J. Nolen, Jr., which, in so far as it relates to this issue, is in substance that in December, 1916, the Nolen Bank was composed of Roy L. Nolen and the witness, as surviving partners of the partnership which formerly included S. J. Nolen, Sr., then deceased; that from the death of S. J. Nolen, Sr., in 1915, and through 1916, the bank was conducted by witness and Roy L. Nolen as surviving partners, and on January 31, 1916, complainant executed the mortgage to the bank to close up the past indebtedness to the bank; that on December 1, 1916, witness, acting for the bank, sold this paper to Marie N. Potts for $3,200, paid by her by check drawn on the Nolen Bank, which was paid by the bank out of money which she then had on deposit in said bank, and the paper was transferred and delivered to her; that at that time she was not notified of the alleged usury in the paper, that she did not know very much about the affairs of the bank, and that since that time witness has had some conversations with the husband about notifying the complainant about the payment of the debt; that witness and Roy L. Nolen continued to act as surviving partners in the conduct of the business up to January 18, 1917; and that Marie N. Potts had no interest or stock in the bank prior to said date.

Neither the check alleged to have been given on the bank in the purchase of this paper, nor the books showing that Marie N. Potts had money on deposit in the bank at that time, nor the entry on the books, if there was such, showing the transfer of the sum alleged to have been paid from her account to a credit in favor of the bank, were offered in evidence. The cross-complainant did not testify as a witness in her own behalf. The transfer of the paper was not indorsed on the note and mortgage, or either, but was written on a separate paper which is not shown to have been attached to the note or mortgage.

[5] At the time of filing the bill and up to the trial, Marie N. Potts was a member of the respondent partnership, and the matters alluded to were important evidentiary facts in the keeping of the cross-complainant, the failure to produce which, or to account for their absence, casts suspicion on the bona fides of her claim. Blue v. First National Bank, supra; Carter v. Chambers, 79 Ala. 223–231.

It is a conceded fact that S. J. Nolen, Sr., in his lifetime owned practically all of the interest in the Nolen Bank, and that the present partnership consists of his wife and children, who succeeded to their present interest in the bank under the last will and testament of said Nolen; Marie N. Potts being referred to in the will as Marie Nolen. The provisions of the will, in so far as they are here pertinent, are:

"Item 2. To the end that a permanent estate may be established and kept intact to provide a certain annual income for use and enjoyment of my beloved wife and children, I will and bequeath unto my said wife Mary E. Nolen, if she survives me, and to said children, surviving at my death, and *per stirpes* to the widow or husband and lineal descendants of those who may be dead at my decease, namely, Roy L. Nolen, Leon A. Nolen, Lessie V. Nolen, S. J. Nolen, Jr., *Marie Nolen*, Helen Nolen, Thurston H. Nolen, Jack Nolen, Jr., and such other child or children as may be born to me in lawful wedlock to have and to hold subject to the conditions and limitations hereinafter set forth, the following described real estate and personal assets, to wit: that certain parcel of real property situated in the town of Alexander City, Alabama, and designated in the survey and plat of said town made by Alber & Byrnes as lot No. 8 (eight) in block A, fronting 39.4 feet on Broad street, now being used by me for banking purposes, and the sum of fifty thousand ($50,000) dollars, consisting of money, solvent credits, one or both which I may have in use at the time of my death in the banking and loan business, and in default of a sufficiency of such banking funds, then the same to be supplied from any other available assets of my estate.

"I will and direct that said real estate and fund of $50,000 shall be held in common as a banking capital, share and share alike by said wife and children, or the survivors of them as herein provided, and managed under the name and style of 'S. J. Nolen, Banker,' during their respective lives, that is to say there shall be no severance of any share in said banking

capital until the death of one of my said children and then the share of such deceased child to be segregated and vested absolutely in his or her right heirs and distributees, the remaining shares continuing in common to be controlled and managed as hereinafter provided, and as each of said life tenants die, his or her share to go to his or her right heirs and distributees, and so on to and including the last of the survivors; but upon the death of my said wife her share in said banking capital shall go to the survivors of said life tenants and to their right heirs and lawful distributees of any that may be dead, the said heirs and distributees taking only the interest of their deceased parent.

"And I direct that my executor, or executors, shall *forthwith, upon their due qualification as such, set over to the use and control of said life tenants the said property herein designated as banking capital*, and thereupon the said life tenants (the guardian or guardians of those who are legally incompetent to act for themselves acting for the latter) shall *at once select and appoint one of their number*, or some other suitable person to act *as president*, and another one of them or some other suitable person to act *as cashier*, of said banking and loan business, both of whom may be required to give bond in such sum as the shareholders may prescribe payable to any one or more of them not an officer in the management of said business, and a majority of said shareholders (guardians acting for the respective wards and each share representing one vote as hereinabove provided) may proceed upon said bond in the name of obligee therein for the uses to which said banking capital is bequeathed, and it is hereby provided that a majority of said share holders, acting as above indicated, shall control and determine all questions and matters pertaining to the management of said business, and that the president and cashier thereof, or either of them, shall have power in the said name of 'S. J. Nolen, Banker,' to do and perform all acts which are necessary and proper to be done in the conduct and management of said banking and loan business, to the extent of loaning money, discounting paper, writing, accepting and indorsing exchange, transferring and assigning choses in action, taking, assigning and foreclosing mortgages, executing conveyances of real estate acquired in the course of said business, and by any of such acts the assignees, purchasers and vendees thereunder shall acquire an absolute and unconditional title in the subject-matter of conveyance or assignment, unless and contrary intention shall be expressed—the said officers being accountable for any negligence or misconduct in the premises; and the books, papers, office and affairs of said business shall be at all reasonable hours open to the inspection of any of said shareholders or guardians of share holders, under such reasonable restrictions as may be deemed safe to the interest of all concerned. The said officers shall be elected or appointed to serve for such length of time, and receive such compensation as the share holders may determine and they shall be subject to discharge or re-

204 ALA.—7

moval at the pleasure of a majority of said share holders. It is further provided that not later than the 1st day of January of each year and not before the 20th day of December preceding, the said officers under the direction of said share holders shall ascertain and declare the net profits or dividends accruing from said business for the preceding year, and the same shall be paid over to said share holders respectively as their interest may appear, but the corpus or principal of said banking capital and the real estate, shall remain intact for the continued operation of said banking business as hereinbefore indicated." (Italics supplied.)

The will was duly admitted to probate in the probate court of Tallapoosa county on June 15, 1915.

It is further shown by the testimony of A. E. Walker, state superintendent of banks, that on the 19th day of October, 1915, after the death of S. J. Nolen, Sr., Roy L. Nolen, as president, and S. J. Nolen, Jr., as cashier, of the Nolen Bank, filed with the State Banking Department a report of the condition of the bank. It is further shown that Roy L. Nolen and S. J. Nolen, Jr., were respectively president and cashier of the bank at the time they testified as witnesses in this case.

The manifest tendency of this evidence is to show that soon after the probation of the will the directions contained therein were carried out, and Marie N. Potts then became a member of the firm; and the whole evidence shows, if it be conceded that she in fact purchased the Sewell note and mortgage, the payment made inured to her benefit in so far as her undivided interest in the banking business was concerned.

The original mortgages of January 18, 1908, and March 1, 1909, were not surrendered to Sewell, and the mortgage of January 31, 1916, shows on its face that it was taken as additional security for these debts; and this fact of itself was sufficient to excite inquiry on the part of the purchaser.

[6] On the whole we are clear to the conclusion that Marie N. Potts has not overcome the burden of proof resting upon her, and that she was not entitled to relief on her cross-bill. Blue v. First National Bank, supra; Lewis v. Hickman, supra. But, on the other hand, the complainant was entitled to relief.

The decree of the circuit court is therefore reversed, and a decree is here rendered granting relief to the appellant, and dismissing the cross-bill of Marie N. Potts; and the cause is remanded for a decree of reference, and for further proceedings in accordance with this opinion.

Reversed, rendered in part, and remanded.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.