4 So.2d 911

**WALLER v. STATE.**

4 Div. 184.

Supreme Court of Alabama.

Jan. 23, 1941.

Rehearing Denied March 27, 1941.

Thos. S. Lawson, Atty. Gen., and Willard McCall, Asst. Atty. Gen., for the motion.

Carmichael, Crenshaw & Simmons, of Opp, D. M. Powell, of Greenville, and Powell, Albritton & Albritton, of Andalusia, opposed.

2

■

"Appellant was convicted of the offense of robbery. Code 1928, Sec. 5460, Code 1940, Tit. 14, § 415.

"His indictment, arraignment, trial, and conviction, were all in the regular forms provided by law.

"No necessity here appears for any lengthy discussion of the details of, or evidence in, the case.

"The testimony on behalf of the State was ample—no error intervening—to support the verdict of guilt returned by the jury.

"But there was error committed on the trial, for which the judgment of conviction must be reversed.

"The State, as a part of its case, sought to show—in fact introduced testimony tending to show—flight on the part of the appellant after the commission (alleged) of the offense charged.

"Appellant, to refute this, testified that he spent the night of the alleged crime (it being claimed by the State to have occurred early in said night) with his father, in the neighborhood of the occurrence. The father did not testify on the trial.

"In this state of the evidence the bill of exceptions recites as follows: 'In his closing argument to the jury the Solicitor made the following statement: "It is a *significant* thing that his (defendant's) father was sitting there and he did not put him on the stand." Defendant objected to the argument and the court sustained the objection. The Solicitor continued in his argument: "That is a *remarkable* thing, gentlemen." Defendant objected to that statement, the court overruled the objection and the defendant duly and legally excepted.' " (Italics supplied.)

The two statements are not of the same import, the ruling of the court was different as to each, and it does not affirmatively appear that they referred to the same incident. Therefore applying the universal rule that the recitals in the bill of exceptions will be construed most strongly against the exceptor, 9 Alabama Digest, Exceptions, Bill of, 519, ⊗26, the last statement, the basis of the error for reversal, was not a statement of fact, but an observation as to the evidence in the case. Moreover, assuming that the last remark referred to the failure of the defendant to put his father on the stand, the Solicitor was clearly within his rights in commenting on the fact. One so closely

Murphy & Cook, of Andalusia, amici curiae, in opposition to the motion.

BROWN, Justice.

The Court of Appeals, in the opinion reversing the case for the alleged error of the Circuit Court in overruling the defendant's objection to the statement of the Solicitor in continuing his closing argument to the jury "That is a remarkable thing, gentlemen," states:

related to the defendant by blood is bound to be hostile to the State and can not be said to be as available to the State as to the defendant. Jackson v. State, 56 Tex. Cr. 28, 117 S.W. 990; 14 Am.Jur. 875, § 151; Com. v. Spencer, 212 Mass. 438, 99 N. E. 266, Ann.Cas.1913D, 559; 16 C.J. 904, § 2250.

The ruling of the court was therefore not erroneous.

The writ of certiorari is granted; the judgment of the Court of Appeals is reversed and the cause is remanded to that court.

All Justices concur.

### On Rehearing.

BROWN, Justice.

The defendant was indicted, and on his trial was convicted of the offense of robbery and sentenced to the penitentiary for twenty years as a punishment for the offense. The proceeding resulting his conviction and sentence are in all things regular and free from error, unless it can be said that the court committed error to reverse in overruling the defendant's objection to the statement of the solicitor *"That is a remarkable thing, gentlemen."* (Italics supplied.)

What the solicitor was referring to as "a remarkable thing" is not clear from the statements of the bill of exceptions, the recitals of which are quoted verbatim in the opinion of the Court of Appeals. The Justices here are divided as to the interpretation of the language. The Court of Appeals was of opinion that it referred to a previous statement of the solicitor in his closing argument, to which objection was sustained by the court, "It is a significant thing that his (defendant's) father was sitting there and he did not put him on the stand."

In a recent case, Schrimsher v. Carroll, 225 Ala. 188, 142 So. 547, 548, it is observed:

"The bill of exceptions must be construed most strongly against the exceptor. If it is susceptible to two constructions, one of which supports the judgment, and the other reverses it, it will be construed so as to support the judgment." Citing Kabase v. Jebeles Colias Conf. Co., 155 Ala. 254, 46 So. 581; McGehee v. State, 52 Ala. 224.

By reference to 9 Alabama Digest, Bill of Exceptions, pages 519-523, ☞26, more than a hundred decisions by this court and the Court of Appeals sustain the holding quoted above, and this has been the rule consistently followed by this court since the January Term, 1848. Goodgame v. Clifton, 13 Ala. 583; 1 Brick.Dig. 251, § 126.

It would seem, therefore, that the logical result in the instant case, there being equal division, to follow the rule and resolve the doubt in favor of the judgment of the Circuit Court, and affirm.

But the defendant insists that this court is bound by the conclusion of the Court of Appeals. That contention is not sound. Where, as here, the Court of Appeals has quoted verbatim at litteratim the statement of the bill of exceptions, this court will construe the language, applying the settled rule, above stated. Craft v. Standard Acc. Ins. Co., 220 Ala. 6, 123 So. 271; Armstrong v. Blackwood, 227 Ala. 545, 151 So. 602; Central of Georgia Ry. Co. v. Purifoy, 226 Ala. 58, 145 So. 321; Ex parte Steverson, 211 Ala. 597, 598, 100 So. 912; Birmingham Southern R. Co. v. Goodwyn, 202 Ala. 599, 81 So. 339.

The opinion of the Court of Appeals states, in substance, that the evidence offered by the State was sufficient to warrant the jury in finding the defendant guilty as charged in the indictment. Therefore assuming that the statement of the solicitor in his closing argument, "That is a remarkable thing, gentlemen," referred to the same incident of the trial which occurred in the presence of the court and jury, the failure of the defendant to offer his father, who was present all during the trial, as a witness, to which first statement the court sustained an objection; the question is, was the overruling of the objection to the last statement error for which the judgment should be reversed?

It is well settled in this jurisdiction, in harmony with the great weight of authority that if a party has a witness possessing peculiar knowledge of the transaction, and is supposed to be favorable to him, and fails to produce such witness when he has the means of doing so, this, in the absence of all explanation, is *a ground of suspicion against him that such better informed testimony would make against him.* Carter v. Chambers, 79 Ala. 223; McGar v. Adams, 65 Ala. 106; Kilgore v. The State, 74 Ala. 1; Fincher v. The State, 58 Ala. 215; 1 Greenleaf Ev. § 82; Ann.Cas.1914A, 916–919.

As stated in the more recent cases: "Failure of a party to produce a witness may under some circumstances give rise to an inference that the testimony of the witness if called would not have been favorable to such party; but such failure is persuasive rather than probative and cannot be invoked as substantive proof of any facts essential to the case of his opponent." Stocker v. Boston & Main Railroad, 84 N.H. 377, 151 A. 457, 70 A.L.R. 1320, and notes 1326, 1330.

This court speaking through Stone, C. J., in Carter v. Chambers, supra, *dealing with a special written charge to the jury*, observed: "The second charge is too general and comprehensive in its terms. Carried to its extent, it would require of a suitor that he should produce all the witnesses, no matter how numerous they might be, who knew anything of the transaction; and failing to do so, to have *the presumption indulged* against him that such witnesses, if produced, would not support his right. There is a rule, and a just one, that if a party has a witness possessing peculiar knowledge of the transaction, and supposed to be favorable to him, and fails to produce such witness when he has the means of doing so, this, in the absence of all explanation, *is ground of suspicion* against him that such better informed testimony would make against him." (Italics supplied.)

This rule or doctrine was reiterated in the exact language of Chief Justice Stone, by the court speaking through Justice Sayre, and applied in Blue v. First Nat. Bank of Elba, 200 Ala. 129, 131, 75 So. 577.

This doctrine was again asserted and applied in Sewell v. Nolen Bank et al., 204 Ala. 93, 96, 85 So. 375, 378. It was there observed: "At the time of filing the bill and up to the trial, Marie N. Potts was a member of the respondent partnership, and the matters alluded to were important evidentiary facts in the keeping of the cross-complainant, the failure to produce which, or to account for their absence, casts suspicion on the bona fides of her claim." Citing Blue v. First National Bank, supra, and Carter v. Chambers, supra.

This doctrine was reiterated and applied in Alabama Power Co. et al. v. Talmadge, 207 Ala. 86, 95, 96, 93 So. 548, 557, in justifying argument to the jury, that a failure of a party to produce an available witness, supposed to be favorable to such party, warrants an *inference* against him. We reproduce the language of Mr. Justice Sayre, concurred in by Anderson, C. J., Gardner and Thomas, JJ:

"But if it be conceded that appellants have a right to the consideration of assignment 135 on this appeal and that the trial court did not exclude that part of the argument from the jury, still there was no error. Counsel for plaintiff argued to the jury in effect that defendants the Alabama Power Company and the Selma Lighting Company had it in their power to explain their method of operating the gas plant, and asked the question what conclusion the jury were entitled to draw from the failure of the named defendants to offer such evidence. Plaintiff had introduced evidence which justified the inference that the Alabama Power Company and the Selma Lighting Company, one or both, were operating the gas plant at the time of the accident in suit. Likewise there was evidence to warrant the finding that the operation of the plant had been negligent, resulting in the death of plaintiff's intestate. We may assume that defendants were contending that the evidence sustained neither conclusion. Such has been their contention in this court. If these defendants were operating the gas plant on the occasion in question, the facts as to the manner of its operation were in the peculiar keeping of persons who, it may be assumed, were friendly to the defendants. In these circumstances it cannot be said that the argument which the court permited to go to the jury, if it did permit any part of it, was unfair or improper. Said Stone, C. J., in Carter v. Chambers, 79 Ala. 223:

"'There is a rule, and a just one, that if a party has a witness possessing peculiar knowledge of the transaction, and supposed to be favorable to him, and fails to produce such witness when he has the means of doing so, this, in the absence of all explanation, is ground of suspicion against him that such better informed testimony would make against him'—citing McGar v. Adams, 65 Ala. 106; Kilgore v. State, 74 Ala. 1; Fincher v. State, 58 Ala. 215; 1 Greenl.Ev. § 82.

"Substantially the same language was used in Pollak v. Harmon, 94 Ala. 420, 10 So. 156, and a like decision recorded in Buchanan v. State, 55 Ala. [154], 158. This is an old rule. It was said by Lord Mansfield in Blatch v. Archer, Cowp. 66:

" 'It is certainly a maxim that all evidence is to be weighed according to the proof which it is in the power of one side to have produced and in the power of the other to have contradicted.'

"Prof. Wigmore says that the propriety of the inference that the party who fails to bring before the tribunal some circumstance, document, or witness, when either he or his adversary claims that the facts would thereby be elucidated, fears to do so, and that this is some evidence that the circumstance or document or witness, if brought, would have exposed facts unfavorable to the party so failing—this inference he says is most natural. 1 Wigm. Ev. § 285.

"In 2 Chamb.Mod.Ev. § 1075, it is said:

" 'In proportion as it is to the interest of the party to submit the evidence of an available witness, the jury are entitled to infer from his neglecting to do so that his evidence, if produced, would not be favorable to the party.'

"Of course, there are limitations on the rule which must needs be observed. Thus, a party is not required to produce all possible witnesses, if that would elucidate nothing—in the present case defendants produced no witnesses as to the facts—nor to produce a witness likely to be prejudiced against them; and it is commonly said that no inference is allowable where the witness in question is equally available to both parties, but this qualification is itself modified by that other last mentioned, to wit, a party may not be expected to produce a witness likely to be prejudiced against him. 1 Wigm.Ev. §§ 285–288. Many of our cases on this subject are collected in Coosa Portland Cement Co. v. Crankfield, 202 Ala. 369, 80 So. 451, and Jackson v. State, 193 Ala. 36, 69 So. 130. Statements of the rule have varied according to the exigencies of the cases. Two cases, Brock v. State, 123 Ala. 24, 26 So. 329, and Coppin v. State, 123 Ala. [58], 64, 26 So. 333, are notable in that they disclose a difference of opinion among the members of the court as then constituted. We venture to observe of these cases that, while Judge Tyson correctly stated the rule in general, the rulings of the court in the circumstances of the two cases were correct. The charge in each case was adultery, and the question was whether, on a severance, the prosecuting attorney was properly allowed to comment on the failure of the defendant on trial to call the other party to the crime. The court answered this question in the negative. The court stated the reason of its ruling in the following language (Brock's Case):

" 'In the present case Coppin could not have been compelled to testify to any fact tending to criminate himself. The offense being one of which he and the defendant must both have been either guilty or innocent, his mere refusal upon the ground of self-incrimination might have been construed by the jury to the defendant's disadvantage. On the contrary, if he had not declined, the credibility of his testimony would have been open to assault upon the ground of interest.'

"This was repeated in Coppin's Case, and this, however satisfactory, serves to distinguish these cases from others in the same general line, and discloses the fact that these decisions are not authority against our holding in the case at bar, which is that if defendants challenged the inferences which plaintiff sought to have the jury draw from the evidence that plaintiff was able to adduce from other sources, as defendants no doubt did, it was proper matter of comment that defendants had failed to produce the testimony of its employes in charge of the plant who, it may be inferred, had better opportunity to know the facts, but whom the plaintiff in the circumstances should not have been expected to summon to the witness stand because, it is not unreasonable to infer, they were not without some natural predilection, prepossession, or prejudice for defendants and against plaintiff. Manley v. B. R. L. & P. Co., 191 Ala. 531, 68 So. 60, does not appear to hold anything to the contrary. For aught appearing in the report of that case, the motorman witness may have been no longer in the employment of the defendant, and defendant may have adduced an array of witnesses who knew as much of the facts as did the motorman. Hence, our judgment that, even if appellants were entitled to a detailed consideration of this assignment of error, no error is shown."

But the defendant stresses the utterance of Chief Justice Brickell in Nelms et al. v. Steiner Bros. 113 Ala. 562, 22 So. 435, 438, that: "It must be regarded as the settled doctrine of this court, that the failure of a party to call a witness, whatever may be the relations between them, who is equally accessible, and equally under the legal control of either party, raises

no presumption—is not a circumstance to be considered—against him."

The court was there dealing with given written instructions on the trial of an action of trespass by the purchaser of goods against the sheriff, for levying an attachment on the goods at the instance of creditors, the sheriff defending on the ground that the sale by the debtor to the plaintiff was fraudulent.

When the statement is considered in the light of the issues and the circumstances in that case, and the limitations *that the witness was equally available and equally under the legal control of either party,* we find no fault with it.

The court was dealing with the contract relation of debtor and creditor and vendor and purchaser. We are not of opinion that the doctrine of equal availability can be applied to the blood relation of father and son, blood of his blood and bone of his bone, nor do we think the learned Jurist had any such thought in mind.

In Crawford's case the witness was not related by blood to either of the parties *and was equally available to both.* Crawford v. The State, 112 Ala. 1, 21 So. 214.

This was so in Coosa Portland Cement Co. v. Crankfield, 202 Ala. 369, 80 So. 451, 452, where the rule was stated: "It has been declared that no unfavorable inference may be drawn and no unfavorable argument of counsel made, because of the absence of the testimony of a witness, where the evidence also shows such absent witness' evidence to be equally accessible to both parties."

In Jackson v. The State, 193 Ala. 36, 69 So. 130, McAfee, the alleged witness was jointly indicted with the defendant for murder, and the defendant had demanded a severance and separate trial, and the court held, on the authority of Brock v. The State, 123 Ala. 24, 26 So. 329, that defendant's failure to call McAfee, was not a proper subject of comment in argument by the solicitor. The underlying thought expressed in Brock's case, in which the alleged witness was jointly indicted with the defendant for adultery and defendant had demanded a severance, was that while the comment of the solicitor was not within the letter of the statute prohibiting comment for failure of the defendant to testify, it was within the spirit of the statute and such comment would, if allowed, undermine and in effect destroy the benefit of the defendant's severance and separate

trial. Moreover, it was pointed out that the supposed witness was not available to either of the parties, if he chose to exercise his constitutional right not to give testimony which might incriminate him. Coppin v. The State, 123 Ala. 58, 26 So. 333, was the trial of the accomplice jointly indicted with Brock for adultery.

The case of Bates v. Morris, 101 Ala. 282, 13 So. 138, 139, was a claim suit growing out of garnishment proceedings on judgment, obtained by Morris against Bates, citing St. Pierre Bros., as garnishees. The wife of Bates claimed the indebtedness, and on the trial it was the insistence of Morris that the claim of Mrs. Bates was fraudulent.

She "based her claim upon the following facts, which her testimony tended to show: Prior to 1887 the claimant earned certain money by her own labor, and with her husband's consent was allowed to have and enjoy the proceeds thereof. This money, together with other money, loaned her by her brother, amounting [in the aggregate] to $3,500, she loaned to her husband, W. E. Bates, defendant in the original suit. On February 25, 1889, her husband, W. E. Bates, being unable to pay her the money borrowed, and being as she testified, an intemperate and improvident man, [at her solicitation] he conveyed to her in satisfaction of said indebtedness his undivided one-half interest in the leasehold interest and rights to the premises, which had been rented to St. Pierre Bros.," the garnishees.

The evidence offered by the plaintiff presented an issue of fraudulent transfer by the debtor while insolvent.

The claimant requested, among others, the following written charge: " '(5) The court charges the jury that the mere fact that claimant failed to introduce her husband as a witness in this case is not to be considered by the jury as a circumstance against her, but it is a circumstance that can be considered by the jury for or against her, as they may see fit under all the evidence in the case.' "

This charge was refused by the trial court and on appeal to this court its refusal was held to be reversible error, for the reason to state it in the language of the opinion:

"There is no room for any inference that she had omitted the statement of any material fact to which the husband would have testified, or that his evidence would

not have been merely cumulative, corroboratory of the evidence she had given. *If it was supposed there was any fact within his knowledge of which there was not evidence, or that, so far from corroborating, he would in any respect have contradicted the evidence of the appellant in support of the transaction, the appellee ought to have examined him.* Not having examined him, there is no room for any conjecture or speculation as to the character of the evidence he might have given, nor any just reason for unfavorable inference against the appellant. If she had called the husband, and he had corroborated the evidence in support of the transaction, his credibility would have been assailed because of his relation to the appellant and to the transaction. This being true, the appellant ought not to suffer by reason of the failure to examine the husband." (Italics supplied.)

Said charge was argumentative—a mere-fact charge,—was self-contradictory and the opinion approving it, in effect authorized an unfavorable inference against the plaintiff for not calling and examining the claimant's husband. Said case, Bates v. The State, supra, has been the stumbling block which has tended to lead away from the true rule, hereinabove stated, and on this point it is unsound and overruled.

In Ethridge v. The State, 124 Ala. 106, 27 So. 320, an indictment for arson, in which two of the five Justices dissented, it was held that overruling the defendant's objection to the comment of the solicitor on the failure of the defendant to call his son, as a witness, was error to reverse, citing Brock v. The State, supra, and Coppin v. The State, supra. In both of the cases cited the alleged witness, as before stated, was an accomplice jointly indicted with the defendant on trial, who had demanded a severance. We have been unable to locate the original record in the Ethridge case, and we assume that the son of Ethridge was also indicted for the arson, and that the rule of the Brock and Coppin cases applies.

If that is not the true status, we decline to follow that case as holding that the defendant's son is equally available to the state in a case in which the father is on trial for a felony. See Ann.Cas.1914A, pages 916–919; 20 Am.Jur. 192, § 187.

The defendant's application is due to be overruled and it is so ordered.

Application for rehearing overruled.

All Justices concur except KNIGHT, J., not sitting.