77 So.2d 388

### Ex parte RESERVE LIFE INSURANCE COMPANY.

#### 7 Div. 327.

Court of Appeals of Alabama.

June 22, 1954.

Rehearing Denied Sept. 9, 1954.

Knox, Jones, Woolf & Merrill, Anniston, for petitioner.

Evans & Norred, Anniston, for appellee.

HARWOOD, Judge.

This is a petition for mandamus to review a ruling of the court below denying a motion by the petitioner to compel a plaintiff in a suit pending in the Circuit Court of Calhoun County to answer certain interrogatories.

In said suit the petitioner here is the defendant and C. H. Hammett is the plaintiff. The complaint claims for amounts allegedly due under a medical and hospital expense policy issued by the defendant to Hammett on 1 July 1952, it being averred in the complaint that such expenses were incurred on 15 March 1953 in connection with an illness and surgical operation occurring after 15 July 1952.

The application for said policy was executed on 26 June 1952. Among the questions and answers therein are the two following which are pertinent to this review:

"8. Have you, or any member of the Family Group to be insured, ever had any disease of the heart, lungs, kidneys, stomach, or bladder; or high blood pressure, paralysis, arthritis, syphilis, cancer, diabetes, hernia, goitre, or rectal disease? No.

"9. Have you, or any member of the Family Group to be insured, received medical or surgical advice or treatment within the past three years? No."

As provided by Section 477 et seq., Title 7, Code of Alabama 1940, certain interrogatories were propounded by the petitioner (defendant) to the plaintiff in the suit below. The plaintiff refused to answer interrogatories 4(d), (e), (f), and (g), and 10, 11, and 12, and 14(b), (c), (d), (e), and (f).

By answer to interrogatory No. 3 the plaintiff stated he had reported to the Seale-Harris Clinic in Birmingham, Alabama, in November, 1944, for an examination and there had been examined by Dr. Smelo.

The plaintiff then refused to answer interrogatories 4(d), (e), (f), and (g), which are as follows:

"(d) Were you informed that your abdomen was tender over the gallbladder area?

"(e) Were you told there that you had a possible gallbladder disease?

"(f) Did you learn that a letter was written in December, 1944 by Dr. Smelo to Dr. Cleveland, advising that you had a possible gallbladder disease?

"(g) Did you discuss your examination at Seale-Harris Clinic with Dr. Hal Cleveland? If so, give your best judgment of the full nature of the discussion as related to any ailments you had."

In answer to interrogatory No. 6 the plaintiff stated that he had on or about 30 June 1952, and on or about 2 July 1952, had X-rays made by the firm of Meadows and Kesmodel in Birmingham. The plaintiff thereafter refused to answer interrogatories 10, 11, and 12, which are as follows:

"10. What report was given you by Meadows and Kesmodel?

"11. Were you informed, either by Meadows and Kesmodel, or through some other doctor, that Meadows and Kesmodel diagnosed your trouble as a non-functioning gallbladder?

"12. Did Dr. Meadows state to you in substance that you had a poor functioning and diseased gallbladder? If he did not tell you this in substance, state your best recollection of what he did tell you about the gallbladder."

By answer to interrogatory 13 the plaintiff stated that he had seen Dr. John Durden in September 1952 about some complaint.

The plaintiff then refused to answer interrogatories 14(b), (c), (d), (e), and (f), which are as follows:

"(b) Did he tell you in substance that you had a diseased gallbladder?

"(c) Were you told by Dr. Durden that you had gallbladder trouble?

"(d) State in substance what you recollect that Dr. Durden told you about your gallbladder.

"(e) State in detail what you told the agent of the defendant with respect to your gallbladder trouble at the time you executed the application for insurance.

"(f) State in detail what you told the agent of the defendant with respect to your past physical ailments at the time you executed the application for insurance."

The grounds stated by the plaintiff as a basis for his refusal to answer all of the above interrogatories were that they called for hearsay testimony, or for evidence equally available to the petitioner-defendant.

■ Interrogatories 4(d), (e), (f), and (g) show on their face that they pertain to medical examinations had by the plaintiff in November 1944, nearly six years previous to the date of the application for the insurance. The question in the application asked if the applicant had received medical advice within three years prior to the application. The evidence sought by these interrogatories was therefore immaterial in this aspect.

By answer to question 8 in the application the plaintiff indicated that he had never suffered from any disease of the bladder.

Petitioner contends that those interrogatories pertaining to plaintiff's knowledge of possible gallbladder disease in 1944 resulting from the examinations of that year should have been answered because material to petitioner's liability and that "bladder disease" covers "gallbladder disease."

■■ We do not agree with this contention. We think it common knowledge that when used in medical parlance "bladder disease" refers specifically to the urinary bladder, and not to the gallbladder. Further, insurance contracts are to be construed most strongly against the insurer, and when fortified with this principle we think it clear that "bladder disease" as used in the ap-

plication cannot be reasonably construed to include "gallbladder" disease.

The court therefore properly denied petitioner's motion in so far as interrogatories 4(d), (e), (f), and (g) are concerned.

■ In view of question 9 on the application, and plaintiff's negative answer thereto, as to whether plaintiff had received medical attention within three years prior to the date of the application, the answers to interrogatories 10, 11, and 12 called for matters within the three-year period, and matters which might possibly be material to the defense of the suit filed by the plaintiff in light of Section 6, Title 28, Code of Alabama 1940.

The evidence sought by interrogatories 10, 11, and 12 was not hearsay, inasmuch as it was made in plaintiff's presence in a conversation in which he participated. Ex parte Rowell, 248 Ala. 80, 26 So.2d 554; LeGrande v. LeGrande, 178 S.C. 230, 182 S.E. 432, 102 A.L.R. 582; see also 20 Am. Jur. Sec. 555.

■ The rule is that the adverse party is not required to disclose in his answers to interrogatories information equally available to the propounder. Ex parte Wood, 253 Ala. 375, 44 So.2d 560.

However, we do not think the plaintiff can be excused from answering interrogatories 10, 11, and 12 on this basis.

The mere fact that a witness may be served with subpoena at the instance of either party does not necessarily make such witness equally available to both parties. The phrase is *equally* available, not merely available.

The equality of the availability must often be deemed as affected by the relationship of the parties to the witness. See Waller v. State, 242 Ala. 1, 4 So.2d 911; Brown v. State, 200 Miss. 881, 27 So.2d 838; White v. Metropolitan Life Ins. Co., Mo.App., 218 S.W.2d 795.

■ In this instance the relationship of doctor and patient had existed between the plaintiff and the medical witnesses mentioned in interrogatories 10, 11 and 12. While communications between doctor and patient are not privileged in this State, in so far as testimony in a court is concerned, yet we judicially know as a matter of common knowledge that such relationship is a confidential one, as it should be. Both the doctor and the non-patient are necessarily placed in a delicate, if not awkward position, in so far as disclosing or obtaining information pertaining to a patient is concerned. We therefore do not think that the evidence sought should be deemed equally available to the petitioner as to the plaintiff.

It is our conclusion therefore that petitioner's motion should have been granted as to interrogatories 10, 11, and 12.

What has been written just above is also applicable to interrogatories 14(b), (c), and (d), and the court should have granted petitioner's motion as to these interrogatories.

■ The court properly denied petitioner's motion as to interrogatories 14(e) and (f), since clearly the evidence sought by these interrogatories was equally available to the petitioner.

It is therefore ordered that the writ be granted as to interrogatories 10, 11, 12, and 14(b), (c), and (d), and denied as to interrogatories 4(d), (e), (f), (g), and 14 (e) and (f).

Mandamus issued in part, but denied in part.

### On Application for Rehearing.

In his application for rehearing plaintiff in the suit below contends that we erred in the order issued in this proceeding for that the consultations between the plaintiff and his doctors, inquired about in interrogatories 10, 11, and 12, and 14(b), (c), and (d), occurred after the date on which the application for insurance was executed.

■ Interrogatories should be answered unless it appears affirmatively that the evidence sought is patently objectionable and inadmissible. Ex parte Driver, 255 Ala. 118, 50 So.2d 413. It is also axiomatic that if evidence is admissible under one

theory it should be received, even though not admissible under every possible theory.

The complaint sets forth that the claim arises under a policy insuring against loss by medical expenses resulting from sickness originating after 15th July 1952.

Plaintiff's claim arose from surgical and hospital bills incurred from hospitalization from 19 March 1953 to 19 April 1953 during which time an operation for removal of his gall bladder was performed.

It is thus a reasonable conclusion that the answers to the above interrogatories would tend to show whether the illness for which the claim was filed, i. e., removal of the gall bladder, originated prior to 15 July 1953.

The examination and findings by Drs. Meadows and Kesmodel on 30 June 1952, and 2 July 1952, clearly possess probative value in this aspect.

The evidence sought by the interrogatories pertaining to Dr. Durden's examination and report to the plaintiff, made in September 1952, could also tend to shed light upon the originating date of plaintiff's illness, and thus such evidence is of possible materiality in this suit.

Application overruled.