ELLIS, Judge.
Plaintiff as father of his minor child, John Melvin Guillory, Jr., brings this suit both individually and for the use and benefit of his son, for damages caused and personal injuries sustained by plaintiff’s son in an automobile-bicycle collision.
The material allegations of plaintiff’s petition allege that John Melvin Guillory, Jr., an unemancipated minor, was riding his bicycle in the City of Baton Rouge in an easterly direction on Winthrop Avenue and after crossing the intersection of Donmoor he turned south on Donmoor proceeding in a southerly direction, and upon traveling approximately 25 feet along the edge of the road, he collided with an automobile operated by Mrs. Rita B. Bretz, wife of defendant Richard Bretz, and the accident and resulting injuries to plaintiff’s minor son and damages to plaintiff were due to Mrs. Bretz’ negligence. Plaintiff pleaded alternatively that if the minor son was guilty of contributory negligence that defendant had the last clear chance to avoid the accident and failed to do so.
Defendants answered admitting plaintiff’s procedural capacity and that the accident occurred, that plaintiff’s son was riding his bicycle in an easterly direction on Winthrop and had turned to proceed in a southerly direction on Donmoor. They admitted the accident occurred 25' south of the south parallel line of Winthrop and one foot west *868 of the East parallel line of Donmoor, specifically denying the particular acts of negligence listed in plaintiff’s petition. The defendants also plead contributory negligence.
The District Court, finding that law and evidence being in plaintiff’s favor, rendered judgment for plaintiff in the amount of $2,383.35 against Allstate Insurance Co., and Richard H. Bretz, in solido. Judgment was also rendered in favor of plaintiff for the use and benefit of his minor son in the principal sum of $4,000 with legal interest and costs, including expert witness fees to be taxed against the defendants in solido.
From this judgment defendants have appealed and plaintiff has answered asking for an increase or allowance of certain items.
The minor who was injured by the Bretz automobile did not testify on the trial. Thus, the only remaining eyewitness to the accident and its surrounding circumstances was Mrs. Rita Bretz. The Judge did not require the minor’s testimony and the defendant did not cross examine him when counsel for plaintiff tendered the minor, who was waiting in the hall outside the courtroom, the reasons being based upon one of the doctor’s testimony that serious mental trauma might occur upon refreshing the child’s memory on the circumstances surrounding the accident. Thus the plaintiff overcame the inference ordinarily attributed to the party failing to produce a material witness.
The facts immediately prior to the accident are derived solely from Mrs. Bretz’ testimony which was to the effect that she was driving on a community mission to deliver a wedding present to her maid, and was accompanied by her three children. After turning on Donmoor she proceeded to a point some half a block or less from the intersection of Winthrop. This was when she noticed the minor child of plaintiff pedaling a bicycle in an easterly direction along Winthrop. She had proceeded some 20 feet or so when she saw the child make a turn onto Donmoor. It was at this point that she slacked her speed and applied her brakes slightly. The child on the bicycle continued to make a wide arc in turning and was headed at an angle toward Mrs. Bretz’ automobile. Mrs. Bretz then realized that a collision was imminent and applied her brakes hard, steering to the right to avoid an accident. The automobile struck the front wheel of the bicycle at or near the front right fender. Mrs. Bretz stated she only noticed the child’s feet pedaling until the collision. The child landed on the hood of the automobile upon impact and lost a shoe, apparently from the impact.
After the collision people appeared from the residential area. Upon being cross-examined as to exact distances, Mrs. Bretz estimated that young Guillory was 30 feet from the intersection on Winthrop and that she was 100 feet from the intersection on Donmoor. She stated that he crossed the intersection and was making a right turn onto Donmoor when they collided. On direct examination she also stated the child apparently did not look where he was going.
Her testimony concerning the speed at which she was traveling at the moment of impact was that she thought she had come to a stop. It is obvious that this witness has underestimated the fact concerning the speed she was traveling at the impact. The mere fact that the bicycle wheel was damaged to the extent that it was and the fact that the child was thrown over the handlebars and onto the hood of defendant’s car indicated that that automobile was traveling at considerable speed at the moment of impact. This observation holds true even though the bicycle speed was not ascertained upon the evidence adduced in the trial court. It could hardly be said that young Guillory was moving at such a rate of speed to have thrown him on the hood of the automobile upon striking it, certainly not without some momemtum in *869 the opposite direction by the automobile itself.
Turning briefly to the questions of distance, it once again appears from the facts that Mrs. Bretz underestimated the distance she was from the intersection when she first saw the child or conversely she overestimated the distance the child was from the intersection. Had she been only 100 feet from the intersection when she first saw the child, the child being 30' feet from the intersection, then the child would have traveled almost 70 feet to the point of impact. The automobile would have traveled approximately 75 feet, it being stipulated that the collision occurred 25' south of Winthrop.
This court was favored with photographs made from various angles at the scene of the accident, as well as a plat of that portion immediately surrounding Donmoor and Winthrop. There is one photograph, especially, which shows whether the vision of an automobile driver is obstructed by the plant growth in the yard to the west of Donmoor. This photograph marked “Doyle 6” indicates that, despite some sizeable oaks growing in the yard, a person approaching Donmoor from the west on Winthrop could be seen from a distance of over 250 feet from the intersection of Donmoor and Winthrop.
There were several other witnesses introduced by plaintiff and defendant on the question of liability, however, their testimony did not inform this court as to any pertinent facts surrounding the accident, save that of the police officer Connolly. His testimony concerned the investigation of the accident. It revealed that Mrs. Bretz had applied her brakes at a total of 52 feet before stopping the automobile, 27 of these feet being light skid marks. Officer Connolly testified on direct examination for defendant and stated that Mrs. Bretz’ speed was sought to be ascertained by a fellow police officer and himself by running her automobile to a speed of around 20 miles per hour and upon heavy application of the brakes the officer “laid down” 25 feet of heavy skid marks.
There was a skillful attempt on the part of defense counsel to show that the road conditions during the police investigations were better than those actually prevailing during the accident, and thusly Mrs. Bretz was going less than 20 miles per hour when she applied her brakes. A reference to the photographs marked “Doyle 2” will reveal that the rear wheels of the Bretz automobile never left the pavement and that it could be reasonably assumed that at the time Mrs. Bretz applied her brakes heavily she was traveling at least 20 miles per hour. The condition of the brakes on the Bretz Buick was not determined but had they been ideal the actual stopping distance at a speed of 20 miles per hour is 18 feet. See Blashfield’s Cyclopedia of Automobile Law and Practice, § 6237, Pg. 415. The inescapable conclusion derived from the above assumption is that she had lightly applied her brakes prior to this and therefore was exceeding a speed of 20 miles per hour when she lightly applied her brakes for some 27 feet and suddenly applied her brakes heavily, thus causing skid marks of 25 feet.
The remaining fact that has a bearing on the question of liability was brought out on cross examination by Mrs. Bretz. She stated that she could not recall whether or not she blew her horn. After reviewing carefully the surrounding circumstances it is the considered opinion of this court that Mrs. Bretz did not in fact sound her horn. She admitted that the child apparently did not see her and actually did not recall whether she did blow the horn. We feel that had she blown the horn she not only would have remembered doing so, but would have recalled the effect upon the child. It was revealed during the trial that the child never varied his course but made a constant turn into the path of the Bretz automobile.
We hereby summarize the salient facts for emphasis. First, the defendant’s *870 wife, Mrs. Bretz could have and should have observed the child from a position of over 2S0 feet from the intersection of Winthrop and Donmoor; secondly, even though she did observe the child 100 feet distant and thought the situation might be perilous to the child it was not until she was 52 feet away that she only lightly applied her brakes, without giving the unsuspecting child a warning of the approaching danger. Thirdly, she failed to apply her brakes with force enough to stop the automobile until it was impossible to avert a collision with the bicycle rider, also she failed to blow her horn at this point, seeing that the child was unconscious of his immediate danger.
Counsel for defendant has urged that the lower court was in error in finding defendants were answerable in damages to plaintiff and his son. In support of this position they cite several cases, none of which are applicable on the question of fact. It is important to realize that many cases quoting rules of law concerning negligence or contributory negligence, apparently in keeping with the facts applied to a particular situation. An appellate court in applying such rules must weigh, carefully, all the evidence adduced and reach their conclusions of fact only after due deliberation. Once the facts are determined it is a matter of due course in applying the applicable rules of law. This court, having decided that the doctrine of last clear chance applies to these facts adopts a portion of Judge Odom’s opinion cited in Rottman v. Beverly, 183 La. 947, 165 So. 153, at page 156 which sets forth the duty incumbent on Mrs. Bretz in this case, to-wit:
“Where the danger is brought about by plaintiff’s own negligence, but is not discovered by defendant, because of a failure to exercise due care, the parties are on equal footing. Their faults are mutual, their negligence is concurrent. It arises from the same cause, viz., failure to observe. The negligence of each party is a contributing cause of the accident. In such case it cannot be determined whether the negligence of the plaintiff or that of the defendant was the proximate and immediate cause of the injury, and neither party can recover.
“But if a plaintiff negligently puts himself in a place of danger and his negligence and danger are actually discovered by the defendant, then there devolves upon the defendant a duty which intervenes or arises subsequent to the negligent acts of the plaintiff, and that duty is to save the plaintiff from the consequences of his negligent acts if he can. The first duty of those who operate engines or motor vehicles is to keep a sharp lookout ahead to discover the presence of those who might be in danger. If they perform that duty and discover that some one is in danger, then a second duty arises, and that is to use every possible available means to avert injury. * * * ”
The rule as stated in the Rottman case could be easily applied to the facts in this case. The Guillory child never was aware of his peril but the driver of the Bretz automobile, although realizing the child’s peril, failed to blow her horn or to forcefully apply her brakes — two readily available means of avoiding injury to plaintiff’s son.
The jurisprudence relied upon by defendant is headed by the case of Jenkins v. Firemen’s Insurance Co. of Newark, N. J., La.App., 83 So.2d 494, 499, in which the court did not allow plaintiff’s claim for injuries to his daughter. The facts in the Jenkins case revealed a straight paved road two miles south of the west gate of Barksdale field. The controlling fact was the minor running into the path of defendant’s automobile just as a truck passed the automobile. Other facts that prompted the courts to render judgment in favor of the defendant was that the child *871 had been near the highway where she was ■observed by the driver of defendant’s automobile, then she went to the house out of the driver’s view. When the child returned to the highway she was obstructed from the driver’s view by oncoming traffic. The court felt that the doctrine of last clear chance did not apply since defendant was never aware of the peril in which the child had placed herself until it was too late to prevent the accident. An additional fact in defendant’s favor was that no houses or stores were on the side of the road where the plaintiff’s daughter was running, while there were several on the side from which she ran. The court did state, however, in general terms the duties incumbent upon a motorist upon observing a child, viz.:
“It is obvious from a reading of any substantial part of the jurisprudence of our state dealing with motor vehicle accidents involving children that an important consideration directly bears upon the duty of a motorist to observe any circumstances which would indicate an extraordinary hazard arising from the presence of a child near the street or highway. The danger and the need for unusual care and precaution increases- in proportion to the number of children congregated at or near a given point; the occurrence of an incident which might prove attractive; the existence of an apparent crossing, or locality used for traversing a highway; the presence on or near the opposite roadside of anything calculated to attract children; the use of wheeled instruments by children, such as bicycles, wagons, scooters, etc. We reiterate the observation that none of these, nor any other similar factors were susceptible of observation in the instant case.”
Defendant urges that Mrs. Bretz had no “duty” to stop her automobile upon seeing the child on his bicycle and cites as authority Guillory v. United Gas Public Service Co., La.App., 148 So. 274. However, in that case the child that was struck by an automobile was standing on or near a corner and apparently waiting for traffic to pass. As defendant’s auto drove by eyewitnesses established that she stepped into the rear door and fender of the automobile, thus the cited case is clearly inapplicable to the case at bar.
In Fuller v. Buckner, La.App., 38 So.2d 422, a motor bike being driven at night ran into an oncoming automobile. While the court decided that both parties were negligent, they denied any claims of plaintiff since his negligence contributed to the accident and found that there was no evidence in the record to show that the motor bike had been in defendant’s lane of traffic long enough for defendant to see him.
Defendant has urged on appeal that a sudden emergency was created by the acts of Guillory’s son in this case. There was no evidence shown creating a sudden emergency.
As stated previously the trial judge awarded plaintiff a judgment individually in the amount of $2,383.35, plaintiff praying for an amount of $2,582.77. This calculation excludes the items plaintiff sued on of $110 of estimated future medical expenses; $20 for future X-rays and $90, cost of enrolling child in summer camp. The plaintiff did not sufficiently prove these items, hence they are disallowed.
After a careful study of the medical testimony, this court is satisfied that the award was in proper proportion to the injuries suffered by young Guillory as well as his difficulty in becoming rehabilitated. Although the recovery to the child’s leg, after the leg was set, was normal and, as stated by the physician, “very satisfactory,” nevertheless the entire episode of the boy’s hospitalization and post-hospitalization period is one of severe physical pain giving way to a mental disturbance. The first ten days the child was in .the hospital he was in excessive pain and required constant attention with heavy doses of sedatives to keep him restful and quiet. Even after *872 he began to feel less pain, which appeared to be the tenth day after his entering the hospital the child seemed to undergo a serious mental trauma. This is best illustrated by the physicians statement along this line, a portion of which we quote:
“Q. Now in one of your reports — • you didn’t read all of them, of course— A. No, sir.
“Q. The one of June 25, 1956, you made some mention, I believe of some apprehensiveness on his part. Will you explain what you meant in that report when you spoke of that? A. Well, this boy’s main problem in spite of his fracture was not as much the broken bone as the mental trauma that this child sustained in association with Ihis accident, hospitalization and treatment, he seemed to have no confidence in himself, and he was extremely frightened and upset, and without real physical justification for it, and the mental trauma, to me, was the thing that was the greatest episode that was harmful to the child. He was very frightened, and as I believe I mentioned on the 11th of January, 1956, I saw this boy in the hospital and it was more just for reassurance, and we took some other X-rays and were .able to show this child that his bone was good and solid, and even that had to be followed up and he had to be ■encouraged and shown — he had to show “himself really that he was alright and that he could go ahead and make a ■normal recovery. I believe that even during the summer of 1956 that a greater part of that restoration of his confidence came about in association with the camp that the little fellow was at and when he was actually convinced himself he could participate with other little boys of his own age in similar activities.”
The court feels that the combination of the excruciating pain which the child underwent for at least ten days coupled with the mental trauma which was evidence to his physician until the summer of 1956, nearly nine months after the accident, justify in this case, an award of $4,000 for the use and benefit of Melvin John Guillory, Jr.
The plaintiff has urged in his answer to this appeal that the bill of the hospital for photostatic copies of their records, and the other photographers bills, amounting to $107.95 be taxed as costs. We believe that counsel’s position is well taken and it is hereby ordered that the judgment be amended so as to include the sum of $107.95, as well as $50 to Dr. McMains and $50 to Dr. Tyler as expert witnesses. The costs of this appeal and in the lower court are to be paid by defendants.
For the reasons thus assigned the judgment of the district court is affirmed as amended.