194 So.2d 93

**Robert Lee SLATER**

**v.**

**STATE.**

**4 Div. 556.**

Court of Appeals of Alabama.

Nov. 22, 1966.

Rehearing Denied Jan. 17, 1967.

**514**

A. B. Robertson, Jr., Clayton, for appellant.

Richmond M. Flowers, Atty. Gen., and Leslie Hall, Asst. Atty. Gen., for the State.

PRICE, Presiding Judge.

The appellant, Robert Lee Slater, was convicted of the offense of manslaughter in the first degree and was sentenced to the penitentiary for a term of two years.

The indictment charged that defendant killed Jack Robinette by running an automobile over or against him.

For the state, one Morris Andrews testified that on Saturday night, June 12, 1965, he, with El Robinette, Douglas Lunsford and Jack Robinette were drinking beer and talking until 3:00 A.M. The beer gave out and they went to Lunsford's room for a bottle of whiskey. On the way back home they stopped the car between the railroad and highway 51 where there is a little asphalt apron at the intersection of the Elem Church road, a farm to market road, with highway 51. They got out of the car and witness and El Robinette "started scuffling." The others separated them and witness left and went home.

James Teal stated he lived across the road from the intersection. Shortly after 4 o'clock Sunday morning he was awakened by loud talk and cursing. He dressed and drove down the farm to market road a quarter of a mile to his brother's house to get his gun. He passed the intersection and recognized one of the men as El Robinette. As soon as he got the gun he started back home and as he came over a little rise he heard a thud, saw a white automobile and an object flying through the air. He later found out the object was Jack Robinette. He knew it was him by the white shirt he was wearing. The white car was driven by defendant. After he hit the man he stopped his car down the road and then backed almost to witness's mail box. The witness testified there were two bodies at the scene of the wreck, Jack Robinette and Douglas Lunsford. Both bodies were cut in half. When defendant got out of his car he said, " 'Mr. James Teal,' he said, 'I have hit Mr. El Robinette.' I said what: He said, 'Yes, I hit him.' * * * my wife got dressed and out there at that time she started screaming and talking on about finding that part of him dead. He said, 'I didn't do this.' " He said he hit Mr. El Robinette, but he didn't "do this." El Robinette was lying 49 inches off highway 51 on the intersection. The speed of the automobile was ninety miles an hour when he saw it.

The defendant testified he was driving at a speed of fifty miles per hour when he came over a little grade and discovered a man in the road; that he swerved to the left to miss him, but realized he had hit something and brought his car to a gradual stop, backed to a mail box, got out and went back to the scene. He saw Mr. El lying on highway 51. Mr. El was conscious and when he helped him up Mr. El got in his car and left. He didn't know about the two bodies until the Teal lady started screaming.

The state presented evidence tending to show that a part of one of the bodies was knocked a distance of 228 feet by the impact. Photographs of defendant's automobile showing damage to the right front of the car and the right side of the windshield were introduced in evidence. A state trooper testified he smelled alcohol on defendant's breath. Defendant denied he had been drinking.

The conclusion we have reached makes it unnecessary to set out all the testimony in the case. It suffices to say that it presented questions for the jury to determine and was ample to sustain the verdict. We find no error in the court's rulings in this regard.

In his argument to the jury defense counsel remarked: "There were only two eye witnesses to this accident, the defendant and El Robinette. We put the defendant on the stand. El Robinette was a witness to the accident. Why didn't they put him on the stand to tell you what happened?" The record shows the following:

"*MR. BEASLEY*: (Special prosecutor) Object to that. I believe he was equally available and it is improper to comment on it.

*MR. ROBERTSON*: (Defense counsel) They had him subpoenaed.

*COURT*: The witness is present and I believe he would be equally available to you.

(Aside to the Court)

*MR. BEASLEY*: Your Honor we did not put him on as a witness because he has had a nervous breakdown and doesn't remember anything that happened.

*COURT*: They say he is not able. I will sustain the objection to your comment on the failure of the State to call this witness and will give you an exception.

*MR. ROBERTSON*: Yes, we do except."

It is the general rule that the failure of either party to examine a witness equally available or accessible to both is not a proper subject of comment by either of the parties.

Waller v. State, 242 Ala. 1, 4 So.2d 911; Jarrell v. State, 251 Ala. 50, 36 So.2d 336; Barnes v. State, 31 Ala.App. 187, 14 So.2d 242; Orr v. State, 40 Ala.App. 45, 111 So. 2d 627; Brown v. State, 200 Miss. 881, 27 So.2d 838.

"Counsel for a party to whom a particular person is not available as a witness may comment on the failure of the other party to whom that person is available to call him as a witness." Jarrell v. State, supra.

As was pointed out by Judge Cates in the Orr case, supra, the terms "available" and "accessible" do not mean merely available or accessible for service of subpoena. The availability of a witness to one or the other of the parties depends upon such party's superior means of knowledge of the existence and identity of the witness, of the testimony that might be expected from him, or upon the relationship of the witness to the party.

The court, in Waller v. State, supra, said:

"It is well settled in this jurisdiction, in harmony with the great weight of authority that if a party has a witness possessing peculiar knowledge of the transac-

tion, and is supposed to be favorable to him, and fails to produce such witness when he has the means of doing so, this, in the absence of all explanation, is *a ground of suspicion against him that such better informed testimony* would make against him."

The record does not disclose the exact relationship between El Robinette and the deceased, Jack Robinette, but we think the inference to be drawn from the testimony is that they were closely related by blood, and that El Robinette's testimony was not as available to defendant as it was to the state. Waller v. State, supra.

Wigmore, Evidence (3rd Ed.) Sec. 290, para. 3, p. 178, says the affected party has the right to explain away any unfavorable inference which might be drawn against him by showing circumstances to account for his failure to produce the witness. One of the cases cited in the note is Hoard v. State, 15 Lea (83 Tenn.) 318, 321. In that case the defendant, to prove an alibi, introduced witnesses to show that at the time deceased was killed defendant was at the home of Peter Kite and that Kite was at home. He then offered to prove, to explain why he was not introduced as a witness, that Peter Kite had received an injury in the head during the war, for the purpose of showing his mental condition. This was objected to by the state and the objection sustained. The Supreme Court said that it was the object of the offered testimony "to prove that Peter Kite's mind, owing to an injury he had received upon the head, was not in its normal condition. It had been proved by these two witnesses, whose testimony was assailed, that he was at home on the night of the murder, and that he was there accessible to the defendant, and of course might be called as a witness if there was nothing to prevent his being examined, and his non-introduction by defendant unexplained, might justly be the subject of injurious comment. In this view, the defendant had a right to show, if he could, that said Peter Kite's mental condition was such that he could not be introduced as a witness. We think the testimony was competent and should have been admitted. How much weight the jury would have given to it is not for us to determine."

In Guillory v. Allstate Insurance Company, (La.App.) 96 So.2d 866, the minor injured in an automobile-bicycle collision did not testify on the trial, and the only remaining eyewitness was the driver of the car. The court said: "The Judge did not require the minor's testimony and the defendant did not cross examine him when counsel for plaintiff tendered the minor, who was waiting in the hall outside the courtroom, the reasons being based upon one of the doctor's testimony that serious mental trauma might occur upon refreshing the child's memory on the circumstances surrounding the accident. Thus the plaintiff overcame the inference ordinarily attributed to the party failing to produce a material witness."

■ The above two cases illustrate our view that the circumstances of the failure to produce a witness because of his mental condition should be shown by evidence of such condition so that the other party may have the opportunity to rebut the same if he can. We think the statement of the special prosecutor as to the reason for not calling El Robinette as a witness was not sufficient to explain away the unfavorable inference.

■ For the error of the court in refusing to permit the defendant's counsel to argue the state's failure to call El Robinette as a witness, the Judgment is reversed and the cause remanded.

Reversed and remanded.