237 So.2d 520

**David Barton RUEFFERT**

v.

**STATE.**

**4 Div. 15.**

Court of Criminal Appeals of Alabama.

June 16, 1970.

Joe C. Cassady, Enterprise, for appellant.

MacDonald Gallion, Atty. Gen., and Walter S. Turner, Asst. Atty. Gen., for the State.

PRICE, Presiding Judge.

Appellant prosecutes this appeal from a judgment convicting him under an indictment charging that he "did possess, transport or offer for sale marijuana, etc."

Prior to trial the defendant moved the court to suppress the evidence obtained as a result of the search of his automobile. The grounds of said motion are, in substance, that the evidence which forms the basis of this prosecution was obtained through an unlawful search of the defendant's automobile, in that such search was conducted without a search warrant and was not made as an incident to a lawful arrest.

In support of the motion, testimony ore tenus was taken before the trial judge prior to the impaneling of the jury. From this testimony it appears that on the night of August 25, 1968, the defendant and a companion, James Savage, who were military personnel stationed at Fort Rucker, reported to the Enterprise police that they had been the victims of an armed robbery near the Club Casino in Enterprise. Police went to the Club Casino to investigate the robbery. Defendant and Savage were called to come to the club to see if they could identify anyone there as being the persons who robbed them. While there the club owner, Ollie Carson, told officers the robbery charge was a lie; that defendant and Savage were attempting to sell "dope" at the club earlier in the evening. From the Club Casino Rueffert and Savage went with several police officers to the scene of the alleged robbery to search for evidence. On the way back to the police station the officer in whose car defendant was riding called Fort Rucker and asked that "C.I.D." agents be sent to Enterprise. No mention was made of the marijuana or "dope" charge. Fifteen minutes to a half hour later two "C.I.D." agents arrived at the police station.

The defendant testified he and Savage were robbed at gunpoint by four men, one of whom had gotten into defendant's automobile near the Club Casino and had ridden to the scene of the robbery. Defendant's watch and his billfold containing $223.00 were taken. The money was advance travel money to Viet Nam.

Defendant's automobile was a topless Austin Healy Sprint. After the robbery it began to rain. Rueffert and Savage drove to Savage's apartment and changed into dry clothing. They parked defendant's automobile and drove Savage's van type Volkeswagen to the police station to report the robbery.

Michael T. Leary testified he was a criminal investigator for the United States Army. He arrived at the Enterprise Police Station with Mr. Pulasky, another criminal investigator, some time around midnight, and began his interrogation of defendant. Defendant and Savage had been placed in separate rooms and Mr. Pulasky questioned Savage. No mention had been made to him of a narcotics charge and the first time he knew there was any question of narcotics or "dope" was after he had finished questioning defendant concerning the robbery and had come out into the hall and was talking with Mr. Pulasky. At this point Sergeant Moore of the Enterprise Police Department informed Mr. Leary that the police had been told by three or four people that Savage and Rueffert had been trying to sell marijuana at the Club Casino. Mr. Leary then went back in the room and told defendant that he was suspected of "selling or trafficking or possession of marijuana." He read to defendant a statement of his right to counsel and his right to remain silent. He informed defendant of the punishment that could be imposed in the event the charge was proven. He testified:

"I asked him if he would grant permission to the Enterprise Police Department to search the vehicle so that the suspicion could be cleared because he was clearing for Viet Nam on Tuesday following and to clear any suspicion and keep him from being flagged and held up I asked him if he would consent to have his vehicle searched by the Enterprise Police Department;"

that if he would consent to the search this could clear up any suspicion and he could be on his way to Viet Nam without his records being "flagged;" that he told defendant the Enterprise Police Department could start an investigation and he could be held; that defendant was supposed to leave for Viet Nam the following Tuesday and he should clear this matter up. Defendant denied the accusation concerning the marijuana, but consented to a search of the automobile. He said: "be my guest, go ahead, quite allright." The witness informed the police that defendant had given his consent to the search.

The Enterprise police and two C.I.D. agents followed defendant and Savage to Savage's apartment. Defendant's car had a canvas covering or tarpaulin over it which snapped or buttoned on, "just a flat piece that fits over the steering wheel and runs over the tops of the seats." Mr. Leary testified defendant removed the cover. Defendant stated Mr. Leary assisted him in unsnapping the cover. A search of the automobile conducted by the Enterprise police revealed four manila envelopes containing a green vegetable matter which a police officer suspected was marijuana. Defendant was then placed under arrest. His person was searched but no incriminating evidence was found. The officers had no warrant of arrest and no search warrant.

The trial judge denied the defendant's motion to suppress the evidence.

When the jury was impaneled and sworn to try the issues, the state introduced as its first witness Michael T. Leary. The defendant's request for voir dire examination of this witness was granted.

Mr. Leary's testimony on voir dire was substantially the same as that given by him at the hearing on the motion to suppress.

Defense counsel moved that the evidence obtained as a result of the search of the automobile be excluded from the trial. The court denied the motion and stated:

"It is the opinion of this court that this search was legal under the circumstances and it may be presented. And I deny your motion and hold as a matter of law that whatever it is they found out there is admissible in evidence."

After a state toxicologist had testified he had identified the substance in the manila envelopes as marijuana, it was introduced in evidence.

The search of defendant's automobile was not incident to a lawful arrest, was made without authority of a search warrant or warrant of arrest, therefore, the validity of the search must depend on the voluntariness of defendant's consent.

In Duncan v. State, 278 Ala. 145, 176 So.2d 840, the court reviewed many cases holding that a person can consent to search without a warrant and thereby waive the protection of the Fourth Amendment against invasion of the right of privacy, but declared that every reasonable presumption must be indulged against waiver of fundamental constitutional rights; that clear and convincing evidence of waiver is necessary and the burden is on the party claiming waiver to prove it. The consent is not voluntary if it is the product of duress or coercion, express or implied.

In Pekar v. United States, 5 Cir., 315 F.2d 319, the court said:

"* * * if * * * consent is obtained by the use of force or pressure, or where superior authority had any place in the obtaining of the consent, the consent is no consent at all, and the constitutional guarantees against unreasonable searches and seizures have been violated."

It is our view that the defendant did not freely and voluntarily give his consent to the search, but that his consent to the search was induced by the coercive suggestions of the C.I.D. officer.

Ordinarily, since the conviction cannot stand for the above reason, we would not comment on the sufficiency of the evidence to sustain the conviction. But in this case we are of opinion that when all of the facts and circumstance are duly considered, including those concerning the search and seizure, they are clearly not sufficient to prove the charges laid in the indictment.

The indictment is in the alternative. No motion was made to require the state to elect on which alternative it intended to seek conviction. See Jemison v. State, 40 Ala.App. 581, 120 So.2d 748; Herring v. State, 16 Ala.App. 98, 75 So. 646. There was a general verdict of guilt.

According to the evidence defendant's automobile was parked at an apartment building for at least an hour and a half. It was unlocked and was accessible to anyone. Several cars were parked along the curb on the street. One of the manila envelopes was found on the floor between the seat and the door on the passenger's side. The others were in an open panel in the door.

The well established rule in cases involving possession of prohibited liquors is that where actual manucaption is not shown and constructive possession is relied upon, the state must show beyond a reasonable doubt, in addition to the constructive possession, that the accused knew of the presence of the prohibited beverages. Grimes v. State, 38 Ala.App. 94, 76 So.2d 684; Davis v. State, 40 Ala.App. 609, 119 So.2d 236. The rules of evidence in a prosecution for possession of marijuana are the same as those applicable in every other criminal case.

The automobile was not in defendant's actual possession or under his control for sometime before the search. If the mere ownership of the car can be said to constitute constructive possession of the marijuana, there is still an entire failure of

evidence tending to prove that defendant knew of its presence in the automobile.

There was no testimony tending to show defendant transported the marijuana.

As to the charge of offering to sell marijuana, the only testimony introduced was that of a state's witness, Bell, who testified that as he was approaching the Club Casino early in the evening, someone called to him from an automobile parked at the curb; that he walked to the car and the defendant "ask me did I know anybody that wanted to buy any dope;" that he said no and went into the Club Casino. On cross examination the witness testified the car was "a little bitty red car, converitble;" that it has a white top and the top was up. The witness "was standing up above the car but he (defendant) had his head out." There was another man in the car but he couldn't remember what he looked like. As soon as he got inside the Club witness told Mr. Carson defendant was out there trying to peddle or sell dope; that he imagined Mr. Carson called the police because within ten minutes the police arrived with the defendant. He stated he did not talk to the policeman that night; that he never saw the defendant before nor afterwards.

The testimony of this witness was at complete variance with the statements of all the other state's witnesses as to the description of defendant's or Savage's automobiles, and as to the time and circumstances under which they were brought to the Club Casino, but disregarding this fact, we are of opinion his statement of what defendant said to him about someone buying dope, was not sufficient to prove that defendant was in fact offering marijuana for sale.

The defendant was entitled to the requested affirmative charge, or failing that, to have granted his motion for a new trial on the ground of the insufficiency of the evidence to sustain the verdict.

In his argument to the jury defense counsel said:

"Where is Ollie Carson? He started all this and he ain't here."

The record shows the following:
"Mr. Stephens (District Attorney) We object, May it please the court. He had equal opportunity to get Ollie Carson."
"The Court: He had the same right."
"Mr. Fuller: (Defense Attorney) It is up to him to prove his case."

"The Court: I sustain the objection to, where is Ollie Carson. He had as much right to get him as anybody else, * *."

The general rule is that the failure of either party to examine a witness equally available or accessible to both is not a proper subject of comment by either party. But counsel for a party to whom a particular person is not available as a witness may comment on the failure of the party to whom that person is available to call him as a witness. The terms "available" and "accessible" do not mean "available" or "accessible" for subpoena, but the availability of a witness to one or the other of the parties depends upon such party's superior knowledge of the testimony that might be expected of the witness. Slater v. State, 43 Ala.App. 513, 194 So.2d 93; Orr v. State, 40 Ala.App. 45, 111 So.2d 627; Jarrell v. State, 251 Ala. 50, 36 So.2d 336.

In Waller v. State, 242 Ala. 1, 4 So.2d 911, the court said: "It is well settled in this jurisdiction, in harmony with the great weight of authority that if a party has a witness possessing peculiar knowledge of the transaction, and is supposed to be favorable to him, and fails to produce such witness when he has the means of doing so, this, in the absence of all explanation, is a ground of suspicion against him that such better informed testimony would make against him."

Ollie Carson, the only person actually named by the police as having accused defendant of the "dope" charge, was not called as a witness for the state. He was not equally available to defendant as

a witness under the principles set out in the above cited cases. The court erred in refusing to allow defense counsel to argue the state's failure to call him as a witness.

Reversed and remanded.

ALMON, J., not sitting.