Freddie Lamar Miller was indicted for robbery in the first degree, in violation of § 13A-8-41, Code of Alabama 1975. The jury found the appellant "guilty of Robbery, Third degree" and the trial judge set sentence at four years' imprisonment in the penitentiary.
Betty Lou Whittaker testified she was employed by the Home Oil Company on the morning of July 9, 1982, and was working at one of its stations that morning. At approximately 3:45 a.m., she was inside the store while her cousin by marriage, Barney McKenzie, was outside by the gasoline pumps. Sometime thereafter, a black male wearing bluejeans, a loose-fitting brownish print shirt and sunglasses entered the store. He was approximately 5' 8" tall, weighed 160 pounds, was of medium complexion and had a medium thick mustache and bushy sideburns. There were no other customers in the store at this time.
On voir dire, Whittaker testified she looked through three sets of five photographs each and picked the appellant from the last set. She stated black males were depicted in each of the photographs but not all of the subjects had mustaches and bushy sideburns. In fact, the appellant did not have bushy sideburns in the photograph selected, but he did, in fact, have a mustache. There was no suggestion made to *Page 588 
her as to which photograph she should choose, and she was positive the appellant was the one who had robbed her on the night in question.
Defense counsel objected to any in-court identification because it would be tainted by suggestive out-of-court procedures. The trial judge then asked Whittaker, the victim, if the appellant was the man she saw that night, and not necessarily the one she had seen in photograph and she replied that he was.
The jury returned to the courtroom and she identified the appellant as the man who robbed her. Whittaker further testified the appellant said to her, "Give me everything you've got on the counter." (R. 33). She did not see a gun, but she thought he had one because of the way he held his hand inside his shirt and he told her, "I have got a gun." (R. 38).
The appellant kept telling Whittaker to hurry and when she accidentally hit a button on the cash register which caused it to buzz, he told her not to set off any alarms. She opened the register with a key and gave him $170. When she removed a $20 bill from a certain bin in the register, a silent alarm sounded at the police department.
The appellant then told her not to move or follow him and walked out the door and went around the corner, out of the store.
Whittaker said the appellant stayed in the store for five or six minutes and she got a good look at his face. She was positive about her identification in court of the appellant.
Barney McKenzie testified he was sweeping trash in the parking lot at the Home Oil Company on July 9, 1982, at approximately 3:45 a.m. A black male, with a mustache and bushy sideburns, approximately 5'8" tall, weighing 160-165 pounds and wearing bluejeans, a brown shirt and sunglasses walked up to him and asked him how he was doing and then walked into the store.
On voir dire, McKenzie testified he was unable to identify the appellant in any of the photographs shown him by the police. In the presence of the jury, he did identify the appellant as the man he saw that night and he was positive of that identification. McKenzie stated he saw the appellant walk around the corner of the building when he left, but he did not see him with a gun.
Virgil Lee Hall testified he was riding in a taxi with the driver, Ray Lingo, and they were driving south on Oates Street, when a man jumped in front of the cab and said he wanted a ride. He was picked up on East North Street just north of Beulah Street. The man said he wanted to go across town and then changed his mind and told them he wanted to go to Young America.
On voir dire, Hall testified he was shown two sets of photographs and the State said he had picked out the appellant. Hall said the man he picked out was 5'6" or 5'7" tall, weighed 135-140 pounds and had long sideburns and "a goatie" but said that man was not in the courtroom.
On cross-examination, Hall stated the man appeared nervous and said, "Boy, I have f_____ up now." (R. 85). On redirect, he stated the man had on a brown plaid shirt, and bluejeans. Hall admitted if he had picked someone out in the photographs, he might have a hard time recognizing that person later if they changed their appearance.
David Kirkland, an investigator with the Dothan Police Department stated he arrived at the scene shortly after the robbery. He tried to lift fingerprints but was unable to do so.
Harold Locke with the Dothan Police Department testified he had a warrant for the appellant's arrest and he effectuated his arrest while the appellant was riding in a car with Susan Fabris.
The only witness for the defense was Susan Fabris. She testified that on July 9, 1982, the appellant was a boarder at the trailer where she, her children and a girl friend were living. At the time, the appellant was unemployed and paid his rent by babysitting for her children.
On Thursday, July 8, 1982, at approximately 8:00 p.m., Fabris left the appellant *Page 589 
at the trailer with her children and she went to the Busy Bee Cafeteria. The appellant and a friend, Willie Pittman, picked her up there at 11:30 p.m., and the three went to pick up her children at the babysitter's house. They all then went to her trailer, talked for a while and Pittman left at 1:30 a.m. (July 9, 1982). She and the appellant then ate and played cards until 4:30 a.m., when they went to bed.
On cross-examination, Fabris stated she is a prostitute and had been one for nine years. Her mother now has custody of her children.
Fabris said that she was not the appellant's girl friend and he was not her pimp. She admitted that the appellant could have been at the Busy Bee on the night of July 8, 1982, between 8:00 and 11:00 p.m. because she was working that night and had to leave twice during that time.
H.C. Ward, a rebuttal witness for the State, testified that on July 8, 1982, he was employed by the General Cigar Company and around 8:00 p.m., he went to the Busy Bee Restaurant on his supper break. He arrived there at approximately 8:10 p.m., and saw Fabris come in to the Busy Bee. Shortly after he arrived, he left and went to a service station to put air in his tires. He returned to the Busy Bee and parked where he had before.
At this point, he got out of his truck and had a conversation with a black male, 5'8" to 5'10" tall, weighing 160-170 pounds, wearing bluejeans and a brownish shirt and who had a mustache and heavy sideburns.
On voir dire, Ward testified he picked out the appellant in a group of photographs. He said he knew the appellant's name before he looked at the photographs, but said there was no suggestion made to him as to which person was the appellant.
In the presence of the jury, Ward identified the appellant as the man he saw that night. He said he saw the appellant for about one minute, got a good look at his face and was positive about the identification. The appellant had a gun with him that night at the Busy Bee.
 I
The appellant contends he was denied a fair trial because the in-court identification by witnesses Ward and Whittaker was tainted by unnecessarily suggestive out-of-court identification procedures, specifically, the photographic line-ups that were shown to the two witnesses.
In Brazell v. State, 369 So.2d 25 (Ala.Cr.App. 1978), this court stated that:
 "Whether an out-of-court identification procedure has violated due process depends upon the `totality of the circumstances.' Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199], supra; Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387], supra; [Neil v.] Biggers [409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401], supra. This totality of the circumstances test is the standard in deciding whether an identification procedure is unnecessarily suggestive and conducive to irreparable mistaken identification. Caver v. Alabama, 537 F.2d 1333 (5th Cir. 1973).
 "In determining the constitutional adequacy of pretrial identification procedures and the admissibility of identification testimony, the central question is whether, under the totality of the circumstances, the identification was reliable. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140], supra. This determination involves the application of a two-pronged test.
 "[T]he required inquiry is two-pronged. The first question is whether the initial identification procedure was `unnecessarily' [Stovall] or `impermissibly' [Simmons] suggestive. If it is found to have been so, the court must then proceed to the
 question whether the procedure found to have been `unnecessarily' or `impermissibly' suggestive was so `conducive to irreparable mistaken identification' [Stovall] or had such a tendency `to give rise to a very substantial likelihood of irreparable misidentification' [Simmons] that *Page 590 
allowing the witness to make an in-court identification would be denial of due process. United States ex rel. Phipps v. Follette, 428 F.2d 912, 914-915 (2d Cir. 1970)."
See also Raines v. State, 428 So.2d 206 (Ala.Cr.App. 1983).
This record does not support the appellant's contention that either the photographic line-up shown to Whittaker, the victim, or the one shown to Ward was unduly suggestive. Whittaker stated that she looked through three sets of photographs before she picked out the appellant. She said that not all of the subjects had bushy sideburns and a mustache, but they were all similar in appearance. She picked out the photograph of the appellant even though he did not have bushy sideburns in that photograph.
Ward admitted he knew he was looking for someone named Freddie Miller but did not know which photograph was that of Miller. He said that no one told him that the man he was looking for was among the photographs, but that he naturally assumed that he was. Ward said the photographs were very similar.
Even had we found the pre-trial identification procedures to be suggestive, we do not believe the in-court identifications had to be excluded. See Dill v. State, 429 So.2d 633
(Ala.Cr.App. 1982).
 "Whether an in-court identification has been so tainted by an extrajudicial identification as to vitiate the in-court identification is not to be determined solely by the circumstances of the extrajudicial identification, but all of the circumstances relative to the identification of defendant by the witness are to be taken into consideration, and if it is determinable therefrom that an in-court identification was independent of the extrajudicial identification, evidence of the in-court identification is admissible. Matthews v. State, 361 So.2d 1195 (Ala.Cr.App. 1978)."
Dill v. State, supra, Raines v. State, supra.
The in-court identification of the appellant by Whittaker was based on her eyewitness observation of him during the robbery and the identification by Ward was also based on his confrontation with the appellant on July 8, 1982, at the Busy Bee. Both of these identifications were therefore reliable and independent of the pre-trial identification procedures.
 II
The appellant claims a mistrial should have been granted in this case because the State injected the issue of race into the trial.
The circumstances in each case must be examined to determine whether a remark by the prosecution in that particular case is to be considered an appeal to racial prejudice. The remark objected to by the defense occurred during the examination of Lt. Harold Locke of the Dothan Police Department by the prosecution. The relevant portion of that testimony appears as follows:
 "Q Would you tell the ladies and gentlemen of the jury, please, sir, where you arrested the defendant?
"A At 605 North Range Street in Dothan.
"Q And who, if anyone else, was with him, please?
"A Miss Susan Fabris.
"Q Whose car were they in?
 "A A Pontiac that was identified as her mother's car — Miss Kitty Fabris.
 "Q Just for the ladies and gentlemen of the jury, what race is Miss Fabris?
"MR. GRUENEWALD: We object to that.
"THE COURT: Sustained.
 "MR. GRUENEWALD: We move for a mistrial on that basis, Your Honor. That is highly prejudicial.
 "THE COURT: I will deny your motion, but that has nothing to do with this.
"MR. VALESKA: That is all I have at this time.
"Answer the Defense counsel's questions.
 "MR. GRUENEWALD: I don't have any questions. Your Honor. *Page 591 
"THE COURT: You may step down.
 "MR. VALESKA: At this time the State rests." (R. 118-119).
We do not believe the prosecution's remark prejudiced the appellant's right to a fair trial. First of all, the question was never answered. Secondly, the court sustained the objection by the defense immediately after it was made.
 ". . . [T]he general rule is that prejudicial statements, even though improper, are considered capable of being eradicated by the trial judge in sustaining objections thereto or by appropriate instructions to the jury or both. Allred v. State
[291 Ala. 34, 277 So.2d 339], supra; Dunn v. State, 277 Ala. 39 at 44, 166 So.2d 878 (1964) Bachelor v. State, 216 Ala. 356, 361, 113 So. 67 (1927); Anderson v. State, 209 Ala. 36, 44, 95 So. 171 (1922)." (Emphasis added).
Meredith v. State, 370 So.2d 1075 (Ala.Cr.App.), writ denied,370 So.2d 1079 (Ala. 1979). Lastly, Susan Fabris was the only witness for the defense. She took the stand on behalf of the appellant and any implications regarding her race were resolved by her appearance before the jury. Therefore, the trial judge's denial of defense counsel's motion for a mistrial was not error to reversal. Shadle v. State, 280 Ala. 379, 194 So.2d 538
(1967).
 III
The appellant alleges reversible error was committed because the State improperly impeached its own witness.
 "Cases in this jurisdiction indicate that although one may not generally impeach his own witness, there is an exception. When put to a disadvantage by unexpected answers, a party may, for the purpose of showing surprise or for refreshing the witness' recollection, ask his witness if he had not made prior statements contrary to his instant testimony. This is permissible, after proper predicate, even though its incidental effect is to impeach the witness' testimony. Edwards v. State, 51 Ala. App. 433, 286 So.2d 308, cert. denied, 291 Ala. 777, 286 So.2d 313 (1973), is directly on point. Also see: Marcum v. State, 39 Ala. App. 616, 107 So.2d 899
(1958); Woods v. State, 37 Ala. App. 668, 74 So.2d 535
(1954); McElroy, Law of Evidence in Alabama (2nd ed.), § 165.01 (7)(a), p. 387.
Isbell v. State, 57 Ala. App. 444, 329 So.2d 133 (1976). See also Jackson v. State, 375 So.2d 1271 (Ala.Cr.App. 1979).
From a review of the record, the prosecution was undoubtedly surprised by witness Hall's testimony. He had picked out the appellant in a photographic line-up and said he would be able to identify the man at trial. The prosecution certainly was put to a disadvantage by the unexpected testimony of this witness that he was unable to recognize the person who rode in the taxicab with him. Certainly, the prosecution should have been allowed to ask the witness about his prior identification of the appellant and therefore, the prosecution did not improperly impeach witness Ward.
 IV
The appellant contends that the prosecution made several remarks during closing arguments which were improper and require reversal.
We do not agree with the appellant. From our examination of the record, we do not see that the prosecutor's remarks were prejudicial to the appellant. Moreover, the trial judge is given broad discretion in determining what is permissible argument. Hurst v. State, 397 So.2d 203 (Ala.Cr.App. 1981). This court will not reverse unless there has been abuse of that discretion. Such was not the case in the cause before us.
 V
The defense contends a mistrial should have been declared because of the improper remarks by the prosecution to the effect that the appellant was the witness Fabris' pimp.
Any negative implications resulting from the allegedly prejudicial remarks were eradicated when the trial court promptly *Page 592 
sustained the defense's objections to these remarks. SeeMeredith v. State, supra.
 VI
The appellant alleges reversible error was committed when the prosecution made a reference, during closing arguments, to the appellant's ability to get probation.
 "It is true that argument by a District Attorney to a jury that a defendant convicted and sentenced to the penitentiary may be eligible for pardon or parole is improper and has been held to be reversible error. Eaton v. State, 278 Ala. 224, 177 So.2d 444 and Lee v. State, 265 Ala. 623, 93 So.2d 757. However, it is further held if that argument is in reply to argument by the defense that the defendant, if convicted, will be sentenced to the penitentiary, the rule above referred to does not apply and the district attorney is within his rights in making his reply to a subject first introduced in argument from the defendant."
Matthews v. State, 54 Ala. App. 359, 308 So.2d 718 (1975).
This record indicates to us that the prosecutor's remark was merely a reply in kind to defense counsel's argument concerning punishment. Therefore, the prosecutor's comment to the jury concerning probation was not improper. Matthews, supra.
 VII
It is a general rule that a party may not comment unfavorably about the other party's failure to call a witness equally available to both parties.
 "The availability of a witness to one or the other of the parties is determined initially by the party's superior knowledge of the existence and identity of the witness. Henry v. State, Ala.Cr.App., 355 So.2d 411."
 "Whether a witness is available or accessible within the meaning of the rule prohibiting comment upon the failure of a party to call or examine a witness does not mean availability or accessibility for subpoena purposes, but rather a particular party's superior knowledge of the existence, identity and expected testimony of the witness. Henry, supra; Rueffert v. State, 46 Ala. App. 36, 237 So.2d 520."
McMorris v. State, 394 So.2d 392, 402 (Ala.Cr.App. 1980).
In the case at bar, it was the defense's witness, Fabris, who interjected the absent witness, Willie Pittman's name into this trial. Fabris testified Pittman had been with appellant on the night before the robbery and part of the morning on which the robbery occurred. It is obvious that the appellant had superior knowledge of the existence, identity, location and the expected testimony of Pittman. Therefore, the comment by the prosecution concerning the absence of this possible alibi witness was not improper.
 VIII
The appellant claims the State failed to prove a prima facie case of first or third degree robbery and therefore, the conviction should be reversed.
There were two eyewitnesses, Whittaker and McKenzie, who testified that the appellant was the man who robbed Whittaker the morning in question. Whittaker testified it appeared to her as if the man "had a gun" although she did not actually see it but he told her he had a gun. The appellant was seen earlier that night with a gun by another witness. The appellant demanded that Whittaker give him the money in the cash register which he, in fact, took.
Certainly there was sufficient legal evidence contained in this record from which the jury could, by fair inference, have found the appellant guilty of robbery in the first or third degree, and, therefore, this court will not disturb this verdict based on an attack on sufficiency of the evidence.Bender v. State, 420 So.2d 843 (Ala.Cr.App. 1982). James v.State, 405 So.2d 71 (Ala.Cr.App. 1981).
 IX
The appellant claims reversible error was committed by the admission of testimony, *Page 593 
by the victim of another robbery allegedly committed by the appellant, concerning the fact that the appellant was in possession of a gun on the night in question just before the robbery alleged in this case occurred. We do not agree.
First of all, the prosecution was careful not to bring out the fact that the appellant was charged for the robbery of witness Ward on that night. We do not think it logically follows that just because Ward saw the appellant in possession of a gun on that night that the jury would draw the inference that the appellant, in fact, also robbed Ward.
Secondly, certain relevant evidence should be admitted even though it may prejudice the accused incidentally.
 "All evidence is relevant which throws, or tends to throw, any light upon the guilt or innocence of the prisoner. And relevant evidence which is introduced to prove any material fact ought not to be rejected merely because it proves, or tends to prove that at some other time or at the same time the accused has been guilty of some other separate, independent and dissimilar crime. The general rule is well settled that all evidence must be relevant. If the evidence is relevant upon the general issue of guilt, or innocence, no valid reason exists for its rejection merely because it may prove, or may tend to prove, that the accused committed some other crime or may establish some collateral and unrelated fact."
Cheatham v. State, 431 So.2d 1350 (Ala.Cr.App. 1983).
Since this issue vel non of the appellant's being armed, was before the jury, no error occurred.
For the reasons stated above, this cause is due to be and the same is hereby affirmed.
AFFIRMED.
All the Judges concur. *Page 932