TYSON, Judge.
Jerry Morgan, Jr., was indicted for the offense of manslaughter, in violation of § 13A-6-3, Code of Alabama 1975. The jury found him guilty as “charged in the indictment.” The trial judge sentenced him to six years’ imprisonment in the penitentiary.
Orva Jean Kill testified that on March 21, 1987, she lived near the intersection of McFarland Road and Johnson Road in Mobile County, Alabama. There are stop signs on McFarland Road at this intersection. At approximately 9:00 that night, Kill saw two vehicles drive by her house. As the second vehicle passed her house, the vehicle’s lights went out. Shortly thereafter, Kill heard a thump.
Rex Bryant was at his uncle’s house near the intersection of McFarland and Johnson Roads on the night in question. At some point, Bryant heard a truck pass by his uncle’s house. When Bryant looked up, he saw a second vehicle, a Jeep, pass by without its lights on. He saw the Jeep dip down into the road and then a flash of fire appeared. The Jeep flipped three times. Bryant noticed a lot of empty beer cans on the ground around the scene.
On the night of March 21, 1987, Linda Shaw was traveling on Johnson Road in Mobile County. As she approached the intersection of Johnson and McFarland Roads, she saw a vehicle, traveling approximately 60 MPH, run a stop sign. Shaw applied her brakes and honked her horn as that vehicle proceeded through the intersection. Immediately thereafter, Shaw’s vehicle hit the rear end of a second vehicle, a Jeep, as it proceeded through the intersection. The Jeep did not have any lights on at the time, and it flipped several times after the collision. When Shaw exited her vehicle after the collision, she heard a man say, “My brakes didn’t work. I didn’t have my lights on.” Shaw stated that this man smelled of alcohol and, in her opinion, was under the influence.
The appellant was the driver of the Jeep at the time of the accident. He and his front-seat passenger, Kathy McKenzie, sustained minor injuries in the collision. One of the passengers in the back seat, Hope Turner, sustained a severe head injury. The other back seat passenger, Emily Parrish, died as a result of the injuries she sustained in the collision. Dr. Leroy Rid-dick testified that Parrish’s skull was crushed and her brain was lacerated as a result of the injuries she suffered in the collision. The laceration in front of her head was consistent with her head being hit with the flange of the roll bar and being crushed into something else. In Riddick’s opinion, the probability of Parrish’s death was greatly increased by the roll bar on the Jeep having come loose during the collision.
State Trooper James S. Fant checked the Jeep’s brake system two days after the collision and he found it to be working. However, Fant could test only the front brakes. James Small, a criminalist with the Department of Forensic Sciences, testified that he could not determine whether the Jeep’s headlights were on or off at the time of the collision. However, the right brake light and both side marker lights were off at the time of the collision.
Trooper James Hamilton testified that he had a conversation with the appellant at Springhill Hospital after the accident. The appellant said that when he approached the stop sign at the intersection he applied his brakes and nothing happened. He said he turned off his headlights to see if anything was coming. When he saw headlights, he cut his lights back on and turned the Jeep as far as he could to the left, but that there was nothing he could do to stop. The appellant stated that he had had a couple of beers prior to the collision.
The appellant testified that on the night in question he and a group of six other people went riding around in two vehicles. The group consisted of Kathy McKenzie, Hope Turner, Emily Parish, Mike Tice, Petra Smith, and Sharon Aldridge. At some point the group stopped in the woods and made a campfire. The group stayed there for a while and everyone drank a couple of beers. The appellant stated that he had one beer and poured his second one on the fire. As the group got ready to leave, the appellant and Mike Tice helped pull a ear *429 out of a ditch for some boys. As they were doing this, a policeman stopped and talked to them for a few minutes.
The appellant said that when the group left the woods, Aldridge and Smith rode with Tice in his truck and Turner, Parish, and McKenzie rode with the appellant in his Jeep. The appellant said he made sure that all of the occupants of his vehicle had their seatbelts on before they left.
The appellant stated that when he approached the intersection of Johnson and McFarland Roads, he had a hard time seeing the stop sign because there was a lot of overgrowth around the sign. However, he said his brakes failed when he applied them.
John Sims, a mechanical engineer engaged in accident reconstruction, testified for the defense. Sims stated that he examined the appellant’s Jeep after the accident. Fie testified that due to its design, when it is hit from the side, the Jeep tends to roll over as opposed to spinning and stopping like a normal passenger vehicle. The impact from the accident caused the appellant’s Jeep to rotate, and the instability of the vehicle caused it to roll three and one quarter times. The Jeep’s roll bar pulled loose during the accident. Sims testified that the Jeep’s front brakes appeared to be working when he tested them.
Sims also stated that, in his opinion, the alleged misconduct of the appellant was insufficient in and of itself to have caused Parrish’s death. However, he admitted that the Jeep would not have rolled if there had been no collision.
I
The appellant contends that the trial judge erred by failing to give his written requested charges #4, #6, and # 7. We have reviewed each of these charges and we have found them to be misleading, confusing, or incorrect statements of the law; Toles v. State, 484 So.2d 512 (Ala.Crim.App.1985), cert. quashed (Ala.1986). The trial court properly refused these charges. See also Ala.Code (1975), § 12-16-13.
II
During the cross-examination of the appellant, the following occurred:
“Q. Are you aware that if you run a stop sign that people in your vehicle could be injured?
“A. Yeah.
“Q. Are you aware that running an intersection without your lights on at night when it’s dark can be dangerous?
“A. Yes.
“Q. Tell me, Mr. Morgan, what is a rolling stop?
“A. A rolling stop is when you get to three to five miles an hour or so — You are slow enough to see if anything is coming and go ahead.
“Q. Do you consider that a very dangerous practice, Mr. Morgan?
“MR. GASTON: Object, if it please the court. What he considers a dangerous practice or not is immaterial.
“THE COURT: Overruled. Go ahead and answer.
“A. No, I don’t see that it’s dangerous as long as you can see if anything is coming.” (R. 456.)
We fail to see how the appellant was prejudiced by the prosecutor’s question to the appellant as to whether he thought that a rolling stop was a dangerous practice. Defense counsel had just allowed the prosecutor to ask the appellant whether he was aware that injuries could occur if someone ran a stop sign. Furthermore, there was ample evidence that the appellant had, in fact, run the stop sign on the night in question. The appellant admitted failing to stop at the stop sign. The only question was whether the appellant went through the stop sign accidentally or unlawfully. This argument has no merit.
III
The appellant contends that the following portion of the court’s oral charge to the jury was error:
“In determining what the true facts are you take into consideration any natural interest or bias that a witness may have as a result of any connection with *430 the case. You take into consideration the demeanor of the witness. That is how the witness looked and acted on the witness stand as to whether the witness has testified frankly or evasively. You may consider the consistency or inconsistency of the evidence and the meaning and significance of the evidence. You may then accept or reject any part of the testimony of any witness and accept only the testimony you deem worthy of belief. You may, in short, use your good common sense in trying to reach the truth. And it is the law of this state that you may use your good common sense in your deliberations and you should.
“The defendant has testified as a witness in his own behalf. And when he does so, you may consider the testimony of the defendant along with the other evidence in light of the fact that he is the defendant and the interest he has in your verdict. This relation is to be considered together with all the other evidence or lack of evidence.” (R. 545-46).
The appellant asserts that “a trial judge in Alabama cannot comment on the evidence by making any remark, no matter how unintentional, which in its effect influences the jury in the weight it gives to [a] witnesses] testimony.” (Appellant’s brief, p. 54.) He contends that the trial judge’s charge, in effect, instructed the jury to determine the appellant’s credibility differently from the way it determined the credibility of other witnesses. We disagree.
“The trial judge here drew no inferences from the evidence nor infringed on questions for the jury in making his charge. The charge was in no way a statement as to the effect of the evidence or as to the effect the jury should give particular testimony.
“A charge upon the effect of the evidence is a charge which instructs the jury that certain facts in issue have been proved, or that certain evidence in the case does or does not establish a certain fact or facts in dispute, or directs the jury what their finding on an issue of fact must be if they believe the evidence in the case.”
Yarber v. State, 437 So.2d 1319 (Ala.Crim.App.1981) (citations omitted); rev’d on other grounds, 437 So.2d 1330 (Ala.), on remand, 437 So.2d 1337 (Ala.Crim.App.1983).
The court’s charge merely informed the jury that they could take into consideration the interest or bias of any witness, including that of the appellant. We do not find that the court’s charge was an instruction to the jury to consider the appellant’s testimony differently from the testimony of the other witnesses. Furthermore, the last paragraph of the above-quoted charge has been expressly approved by this court in Banks v. State, 448 So.2d 973 (Ala.Crim.App.1984). We find no error here.
The following occurred during the prosecutor’s rebuttal argument:
“MR. JORDAN: He talks about the deputy sheriff. Oh, the deputy. Where is the deputy sheriff?
MR. GASTON: Judge, now I am going to object to that. That witness particularly as a state employee is equally available, is discoverable by the state, as he is to the defense. And I object to his arguing any sort of adverse inference from that witness’s not being here in court.
THE COURT: Overruled.
(Mr. Jordan continued his closing argument, during which the following occurred:)
MR. JORDAN: They want you to imagine some imaginary deputy sheriff who you haven’t even heard from. Who, if he is the one that talked to him, he is the one who can recognize who it was.
MR. GASTON: Judge,—
MR. JORDAN: They could have brought him in here.
MR. GASTON: Judge, excuse me again. I am going to impose an objection and I can do this within the presence of the jury or without it. But that statement and that line of argument is unfounded in fact. It is untrue and it is unfair. It is permitting Mr. Jordan to draw an adverse inference from an alleged failure to produce a witness, who is equally available to both parties.
THE COURT: Ian, the evidence is already in. This is a matter of argument. I cannot hold that the witness is equally available.
*431 MR. GASTON: Even if the state knew of the existence of the witness?
THE COURT: We have to deal with what’s in evidence, what’s presently in evidence. Ian, you can’t throw in implications that something else could be in evidence that is not in evidence. These arguments turn on what’s already in evidence before the jury. The objection is overruled.” (R.525-26).
The appellant contends that the trial judge improperly allowed the prosecutor to comment upon the defense’s failure to call as a witness the deputy sheriff who allegedly talked with the appellant approximately 30 minutes prior to the accident in question.
“It is settled law in this state that no unfavorable inference can be drawn and no unfavorable argument to a jury made by counsel against a party to a cause because of the failure to call a witness to testify when that witness is accessible to both parties. ‘Available’ and ‘accessible’ are words used interchangeably. Helton v. State, supra [433 So.2d 1186 (Ala.Cr.App.1983) ]; Brown v. State, 50 Ala.App. 471, 280 So.2d 177, cert. denied, 291 Ala. 774, 280 So.2d 182 (1973). Availability of a witness to one or the other of the parties is determined, first, by the party’s superior means of knowing of the existence and identity of the witness and, second, by the relationship of the witness to the party that would reasonably be expected to affect the witness’s personal interest in the outcome of the litigation, thus making it natural to expect or assume he would testify in favor of one party and against the other. Hunt v. State, 453 So.2d 1083 (Ala.Cr.App.), cert. denied, 453 So.2d 1083 (Ala.1984); Miller v. State, 431 So.2d 586 (Ala.Cr.App.1983); Brown v. State, supra.”
Hornsby v. State, 517 So.2d 631 (Ala.Crim.App.), cert. denied, 517 So.2d 639 (Ala.1987), cert. denied, 485 U.S. 961, 108 S.Ct. 1224, 99 L.Ed.2d 425 (1988).
“Whether a witness is available or accessible within the meaning of the rule prohibiting comment upon the failure of a party to call or examine a witness does not mean availability or accessibility for subpoena purposes, but rather a particular party’s superior knowledge or the existence, identity, and expected testimony of the witness. Henry, supra [355 So.2d 411 (Ala.Cr.App.1978) ]; Rueffert v. State, 46 Ala.App. 36, 237 So.2d 520.”
McMorris v. State, 394 So.2d 392, 402 (Ala.Crim.App.1980), cert. denied, 394 So.2d 404 (Ala.1981). See also Qualls v. State, 555 So.2d 1158 (Ala.Crim.App.1989).
The deputy sheriff to whom the prosecutor referred during closing argument was the deputy sheriff who supposedly stopped while the appellant and Tice were alledgedly helping two boys pull a car out of a ditch. The defense interjected the identity of this witness into this trial. Four defense witnesses, including the appellant himself, testified that they saw this deputy sheriff on the night in question. In fact, the appellant testified that he had seen this deputy “around” but he stated that he did not personally know him. Clearly, this deputy sheriff was not equally available to both parties, since the appellant had superi- or knowledge of the existence, identity, and the expected testimony of this witness. See Oliver v. State, 440 So.2d 1180 (Ala.Crim.App.), cert. denied, (Ala.1983); Miller v. State, 431 So.2d 586 (Ala.Crim.App.1983). Thus, we find no error here.
The judgment of the trial court is affirmed.
AFFIRMED.
All the Judges concur.