272 So.2d 256

Reno MORGAN

v.

STATE.

8 Div. 168.

Court of Criminal Appeals of Alabama.

Oct. 3, 1972.

Rehearing Denied Dec. 5, 1972.

Ralph E. Slate, Decatur, for appellant.

William J. Baxley, Atty. Gen., and Richard F. Calhoun, Asst. Atty. Gen., for the State.

PER CURIAM.

The indictment contained two counts. The first count charged the appellant with distilling prohibited liquors and the second count charged the appellant with possessing a still to be used for the purpose of manufacturing prohibited liquors or beverages. The defendant entered a plea of not guilty. The trial resulted in the following verdict: "We, the jury find the defendant guilty." Judgment was entered adjudging the appellant guilty of distilling as charged in the indictment and that the appellant be imprisoned in the State Penitentiary for a term of three years.

The case came on for trial on March 30, 1971, at about 1:00 p. m., and counsel for the appellant moved for a continuance on the ground that said counsel was a member of the State Legislature which was to meet the next day and he did not believe that the case could be tried in a half day and it would put too much pressure on him to try to do so. The appellant's counsel had

three other cases on the docket which were included in said motion. The trial judge stated, "I will probably grant your motion to all of them (the four cases) except the Morgan case, I will see that you get away today and you will be free to go to Montgomery tomorrow." There was an exception to this ruling of the trial court.

Parnell Lovett, an investigator with the Alcohol, Tobacco and Firearms Division of Internal Revenue Service of the Federal Government, testified, in substance, that he and other officers raided a wildcat whiskey still in Lawrence County, Alabama, on November 4, 1970; that about eight o'clock that morning he, and a Mr. Mitchell, slipped around and got close enough to this still to hear the burners burning and at that time could just see movement in the woods around the thing; that it was a complete still, and that they went back and joined some other officers; that he watched the still for about one-half hour or 45 minutes; that he could see flames from the burner and could see three people at the still; that he was about 50 yards from the still; that he saw three people at the still at one time or another adjust the burners; that he saw them working on the steam line, sealing the steam lines and that he watched them working around the condenser; that he could not identify them at that time; that he had known appellant before that time; that one of the three men was a tall man, one was fairly stocky, heavy-set fellow, and one was a small person; that in his best judgment, the appellant was one of the three men at the still; that he did not know who the larger man was; that a few minutes after the raid, Deputy Chamness brought the heavy set man back to the still and that he identified him as being one of the men that was at the still because he could recognize his build and his dress; that his name was Roger Dale Hardin; that he saw Hardin at the still working on the steam lines and on the seals on the steam lines; that the man he stated was in his best judgment the appellant he saw working on the steam lines; that he saw him at the condenser on two

different occasions; that he saw him standing around the still yard playing with a dog there; that it was a white bull dog; that they raided the still; that there were about six officers in the raid; that he heard a commotion at the still and the men at the still ran to his left around the hill; that after they got back to town, he went with Billy Chamness to a Justice of the Peace, and there procured a warrant for the arrest of the appellant; that they searched for him in Lawrence County, Alabama, and could not find him; that appellant walked in the jail on December 18, 1970, and gave himself up.

On cross-examination, this witness testified that the appellant was one of the people he saw at the still and described him as being short and a light-weight person; that Roger Dale Hardin was the only person taken into custody that day; that he saw the short, small man squat down with his back to me at the catch can but could not then see what he was doing with his hands; that he saw him adjust or check the seals on the steam line; that he saw him take ahold of the steam lines, that it appeared to him that he was either adjusting the steam lines or sealing the paste around the steam lines; that he was doing something to the steam lines as I could see him put his hand on there; that he knew the appellant by sight before this occasion.

On redirect examination, this witness said he saw the short man stand up and hold a bottle—a glass bottle—up in his hand.

Billy Chamness, a deputy sheriff of Lawrence County, Alabama, testified, in substance, that he was one of the officers who raided the still in question on November 4, 1970; that there were six officers in the raiding party; that as he approached the still, he could hear the burners at the still; that he had known the appellant for five or six years before the date of the raid; that he saw three men at the still; that he saw the appellant at the still on November 4, 1970; that he saw the appellant up at the fuel tank and down to the burner; that the best he could tell he was pasting around

those connections; that he saw him around the connections; that he saw him when he ran from the still; that the pasting around the connections to prevent the steam from escaping is part of the operation of a still; that appellant ran in his direction; that Hardin also ran in his direction; that he ran after him and caught the Hardin boy; that it was a complete still and there were eight gallons of whiskey at the still which they poured out and blew up the still; that he obtained a warrant for the appellant on November 4, 1970; that he tried to find the appellant but did not do so before the 18th day of November 1970.

The evidence for the State further tended to show that whiskey was being manufactured or made on the still at the time of the raid.

The evidence offered on behalf of the appellant consisted in the testimony of the appellant that he was in Michigan at the time the still was raided. He denied that he was at the still on November 4, 1970, and denied any possession or guilty connection therewith.

During the argument of the District Attorney to the jury, the record reveals the following:

"MR. SLATE: Now we object to the statement that, 'if he had a witness who was a friend to him who could have told you—a nephew of his girl friend—who could have told you whether or not he was there.' I am assuming that he was referring to a Hardin boy who is now under auspices of the State on probation. And we say he is equally available to them as they have got their thumbs on him, and we object to that argument and move to exclude it.

"MR. PETTUS: We base that argument on the point that he is not a friendly witness to the State, 242 Alabama Page 1. And we would like for you to read that case and some other cases.

"THE COURT: Well, I don't know. That is getting into tricky matters. The man has already plead guilty. I think prior to the time that he entered his plea of guilty, that it would be proper. Now, whether it is subsequent to that time, I don't know. Who were you making reference to?

"MR. PETTUS: I stated, if the Court please, and I will repeat it, that it was the nephew of his girl friend.

"THE COURT: Well, I will overrule the objection. Let's get on with it.

"MR. SLATE: We reserve an exception to the ruling of the Court.

"MR. SLATE: Now then, we object to his further statement, quote, 'The owner of the white dog,' unquote. Your Honor, he has already brought out that the owner—

"MR. PETTUS: The ownership of the white dog that's

"THE COURT: Well, I reckon according to the defendant, the Hardin boy has a white dog. Now, I don't know whether it's the same dog or not.

"MR. SLATE: So that means he is arguing that the Hardin boy was available to us as a witness, and that is what we object to.

"THE COURT: Well, I am going to let him argue that he is available now based solely on the fact that he has concluded his case.

"MR. SLATE: Yes, sir, Your Honor, and I don't want to get wrong with the court,—

"THE COURT: Well, I don't want either one of you all to put me in a position to where I will make an error in this case.

"MR. SLATE: Yes, sir, but Judge the man is on probation.

"THE COURT: No, he is not on probation. He has entered his plea and has been adjudged guilty, but that's the status of his case at this time."

There was evidence in this case that the appellant was playing with a white dog at the still and that the dog belonged to the Hardin boy who was also at the still.

There was evidence also that the appellant dated a relative of the Hardin boy. There is also evidence tending to show that the Hardin boy spoken of was indicted for the same offense as the appellant in connection with the still in question. It clearly appears from the remarks of the trial judge that the Hardin boy had entered a plea of guilty and had been adjudged guilty but had not been sentenced. There was no evidence that the appellant was related to him.

On this appeal the appellant complains that the evidence was insufficient for a conviction for distilling.

In the case of Elmore v. State, 21 Ala. App. 410, 109 So. 114, certiorari denied 215 Ala. 21, 109 So. 114, the Court said:

"We have held in many cases that the mere presence of a person at a still was not sufficient to overcome the presumption of innocence which attends a defendant charged with, and who is on trial for, a criminal offense. Biddle v. State, 19 Ala.App. 563, 99 So. 59; Biddle v. State, 20 Ala.App. 49, 100 So. 572. This general statement, while still adhered to, cannot be so extended as to invade the province of the jury in passing upon the guilt or innocence of a defendant, whose acts or conduct raises other presumptions tending to connect him with the manufacture of whiskey or the possession of a still. Wherever a defendant is shown to be present at a still, any fact or circumstance, however slight, tending to show participation either as a principal or as aider or abettor may authorize the jury to find a verdict of guilt which will not be disturbed on appeal."

■ In the instant case there was substantial evidence that the appellant was working around the still and thus participating in its operation and that the still was in operation and whiskey was being manufactured or made on the still at the time of the raid. Therefore, the general affirmative charge requested by the appellant was properly refused by the trial court. The contention of the appellant in that respect is without merit.

■ The appellant also complains that the trial court should have granted his motion for a continuance. The Supreme Court of Alabama stated in the case of Aaron v. State, 271 Ala. 70, 122 So.2d 360, 364, that:

"The matter of continuance in a criminal case is addressed to the trial court's sound discretion, the exercise of which will not be disturbed unless clearly abused."

That principle of law has been stated in cases too numerous to cite. See 6A, Alabama Digest, Criminal Law, ☞596. The motion of the appellant for a continuance was without merit and there was no abuse of discretion on the part of the trial court in overruling said motion.

■ A more serious question is raised by the appellant's contention that error existed in the ruling of the trial court permitting the District Attorney to argue that appellant should have called Hardin as witness in his behalf. There is no evidence in this case that appellant and Hardin were related by blood or marriage. It appears without dispute that Hardin had entered a plea of guilty to the same offense and had been adjudged to be guilty but had not been sentenced. That is a situation calculated to close his mouth to any testimony that would harm the State. That is the very means by which the State often secures the testimony of a co-defendant in behalf of the State. Under such circumstances Hardin could well feel that any testimony on his part in behalf of the appellant may result in a more severe sentence being pronounced upon him. He was equally available to the State under the facts of this case. The case of Waller v. State, 242 Ala. 1, 4 So.2d 911, which was cited by the District Attorney in an effort to justify his argument to the jury with reference to Hardin in a case wherein the District Attorney commented on the failure of a de-

fendant to put his father on the stand. In that case, the father was not under indictment for any offense, but the defendant claimed that on the night of the offense he was not present at the scene of the crime but spent the night with his father. In such a situation the court said:

"We are not of opinion that the doctrine of equal availability can be applied to the blood relation of father and son, blood of his blood and bone of his bone."

The opinion in the *Waller* case, supra, discussed the case of Jackson v. State, 193 Ala. 36, 69 So. 130. In that case the Solicitor argued that the defendant should have placed one McAfee, a co-defendant, on the stand and the Court said:

"The plain purpose and effect of the argument was that the jury should indulge a presumption against appellant because he had failed to call McAfee as a witness, and this argument had the approval of the court. The presumption here invoked is indulged with great caution and only when it is manifest that to produce the witness is within the power of the party against whom the presumption will operate and the testimony is not equally accessible to his adversary. Assuming that the witness was 'there in the jail,' as the solicitor stated, he was as accessible to the state as to appellant."

Brock v. State, 123 Ala. 24, 26 So. 329, was cited as authority for the holding in *Jackson,* supra. In the *Waller* case, supra, the *Brock* case is again approved in this manner;

"In Ethridge v. State, 124 Ala. 106, 27 So. 320, an indictment for arson, in which two of the five Justices dissented, it was held that overruling the defendant's objection to the comment of the solicitor on the failure of the defendant to call his son, as a witness, was error to reverse, citing Brock v. The State, supra, and Coppin v. The State, supra [123 Ala. 58, 26 So. 333]. In both of the cases cited the alleged witness, as before stated, was an accomplice jointly indicted with the defendant on trial, who had demanded a severance. We have been unable to locate the original record in the Ethridge case, and we assume that the son of Ethridge was also indicted for the arson, and that the rule of the Brock and Coppin cases applies.

"If that is not the true status, we decline to follow that case as holding that the defendant's son is equally available to the state in a case in which the father is on trial for a felony."

What those cases really hold is that the blood relationship of father and son is not sufficient to allow comment on the part of the District Attorney if they are co-defendants and the alleged witness's case has been tried.

The *Waller* case, supra, stated the rule in this manner:

"There is a rule, and a just one, that if a party has a witness possessing peculiar knowledge of the transaction, and supposed to be favorable to him, and fails to produce such witness when he has the means of doing so, this, in the absence of all explanation, is ground of suspicion against him that such better informed testimony would make against him".

\* \* \* \* \* \*

"and it is commonly said that no inference is allowable where the witness in question is equally available to both parties".

It is true that the facts in the *Brock, Ethridge,* and *Coppin* cases, supra, differ from the facts in the instant case in that in those cases the witness was a co-defendant and had not entered a plea and been adjudged guilty while the co-defendant in the instant case had entered a plea of guilty and had been adjudged to be guilty. However, it must be kept in mind that the person about whom the argument was made in the case at bar had not been sentenced. In such a situation, he could well entertain great fear that any testimony he gave favorable to the appellant would result in the District Attorney's disfavor and cause him to argue

to the Trial Judge that he had perjured himself and that his punishment in the case he had entered a plea of guilty in should be severe. Such a witness could not be supposed to be favorable to the appellant and was, in the light of the circumstances of this case, no more available to the appellant than he was to the State. Therefore, we hold that error to reversal is made to appear in connection with the complained of argument of the District Attorney.

We have searched the record, as is our duty, and find no error therein other than that error above set forth.

It is ordered and adjudged by the Court that, for the error noted and adjudged, this case be and is reversed and remanded.

The foregoing opinion was prepared by L. S. Moore, Supernumerary Circuit Judge, and was adopted by the court as its opinion.

Reversed and remanded.

CATES, P. J., and TYSON, HARRIS, and DeCARLO JJ., concur.

ALMON, J., recuses self.