Timothy Eugene Helton was indicted for the capital offense of murdering one Leon Winterstein during a robbery or attempt thereof in violation of § 13A-5-31 (2) Code of Alabama 1975 (which has been repealed and replaced by § 13A-5-40 (a)(2)).
The jury found the appellant "guilty of murder as charged in the indictment" and the trial judge set sentence at life imprisonment in the penitentiary.
On March 6, 1981, the deceased, Leon Winterstein, called his wife from work and said he did not know when he would be home and for her not to wait up for him.
That night, at approximately 9:00 p.m., Winterstein went to the Esquire House in downtown Mobile and drank heavily with the girls at the club. While there, he spent between $250 and $300, which included three or four bottles of $60 champagne. Winterstein stayed at the club until it closed at 2:00 or 3:00 a.m., on the morning of March 7, 1981.
Sally Dennis, one of the girls at the club, left shortly after Winterstein and noticed his van parked across the street from the club. She then went to meet her boyfriend, Jim Jennings, at another downtown bar. A little while later, they walked by Winterstein's van and saw two men in the van, one on the driver's side and the other one in the passenger seat, but nothing seemed unusual.
Later that afternoon, the police went to a clearing located in a wooded area off Shipyard Road, on the bank of Halls Mill Creek in Mobile County. This came after receiving a call from a fisherman who had discovered what appeared to be the scene of a fight. Several items belonging to Winterstein were found at the clearing including: a bloodstained western shirt and vest, a calculator, a watch, a cigarette lighter, a belt (found in the creek), a western hat, a five dollar bill and a one dollar bill (found inside the vest pocket), several hair samples, several business cards, an empty Miller beer carton, and two sets of keys (one set belonged to the appellant). The clearing was located 1.2 miles from the appellant's home.
Later that day, at approximately 9:40 p.m., Sergeant Charles Parquet of the Mobile Sheriff's Department located Winterstein's van parked in the parking lot of Theodore Oaks Shopping Center.
Blood stains were found on both the driver's and passenger's seats, and tests revealed the stains were of the same blood type as Winterstein's. Hair samples were found inside the van and matched the hair on Winterstein's body.
Winterstein's wallet was found by the side of a road by Perez Pou, a prison inmate working on the road for the Work Release Center. The wallet contained Winterstein's driver's license and there was no money in *Page 1188 
it when the authorities received the wallet from Pou.
On March 20, 1981, Winterstein's partially decomposed body was found in a wooded area off of a service road. The body was clad in only jeans and boots. This scene was 1.3 miles from the appellant's home.
Dr. Leroy Riddick, the Mobile County Coroner, performed an autopsy on the body of Leon Winterstein. The autopsy revealed that Winterstein died from multiple blunt force injuries to the chest. These could have occurred by kicking or stomping or hitting the body with a heavy object against a hard surface such as the ground or a wall.
Donald Norris, a friend of the appellant's, testified he was awakened by the appellant at 3:00 or 4:00 a.m. on March 7, 1981. The appellant was knocking on his door and Norris found him on the front steps asking for help. The appellant had blood on his face and his eyes were swollen.
The appellant told Norris he had been in a fight with three people, and he thought he had killed one of them. He said he was driving a van that belonged to the man he killed and he wanted Norris to help him burn it. Norris refused and the appellant left shortly thereafter.
The appellant returned to Norris' trailer an hour later and asked Norris for a ride home. Norris and his wife, Julie, followed the appellant to Theodore Oaks Shopping Center where he left the van. On the way to the appellant's home, the appellant showed them where he had left the body and told them he took some money from the man he killed. The Norris' testimony concerning the money was not always consistent.
The appellant stated that he worked as an ironworker on March 6. On that day, he was paid. He cashed his check and then went home and gave his mother $40. He left home around 7:00 p.m. with the rest of his money.
The appellant drove around most of the night looking for friends. At some point, he went downtown to see an x-rated movie at the Midtown Cinema. He parked his car in the same parking lot where Winterstein had parked his van. When he got to the theater, he was told the movie had already started and he could not go inside.
When the appellant returned to his car, it would not start so he went across the street to the Club 55 and got a beer. A little while later he returned to his car and he saw Winterstein leave the Esquire House and get into his van.
The appellant went over to the van and offered Winterstein $5.00 for a ride home. He got in the passenger seat of the van and the two proceeded toward the appellant's home. Winterstein asked the appellant if he knew where he could dump some trash and the appellant took him to the clearing next to Halls Mill Creek. Winterstein dumped the trash and asked the appellant if he wanted to drink a beer. The appellant agreed and the two got out of the van. The two sat down and began talking. Sometime later, Winterstein got up and went behind the van. The appellant thought Winterstein was going to relieve himself (although the autopsy revealed he had 100 milliliters of urine in the bladder and he was wearing a condom). When Winterstein returned from behind the van, the two continued to talk and the appellant said he was ready to go home. The appellant got up and told Winterstein he would walk home and gave him a $5.00 bill. Winterstein "giggled" and asked the appellant if that was all he was getting. The appellant replied that that was what they had agreed upon and started to walk away.
At this point, the appellant testified Winterstein attacked him with a stick (a baseball bat was found at the scene) and knocked him down. The two fought violently and the appellant remembers jumping on Winterstein and kneeing him. The appellant passed out and when he awakened, he found Winterstein lying on the ground. He tried to revive Winterstein, but was unsuccessful.
The appellant said he panicked. He put the body in the van and disposed of it at the place where it was found. The appellant *Page 1189 
took Winterstein's silver dollar belt buckle and his hat band and disposed of those items. Winterstein's wallet was lying in the van so he just threw it out the window but did not remove any money.
 I
First, the appellant contends the trial judge erred when he overruled the appellant's objection to the district attorney's remark during closing arguments concerning the appellant's failure to call a witness.
The pertinent portion of the record is set out as follows:
 "MR. GALANOS: May it please the Court, gentlemen of the jury, I shall be brief and I'd like to start out with a fact and that fact is that this indictment alleges that Timothy Helton commited capital murder. It is styled the State of Alabama versus Timothy Helton, not the State of Alabama versus Leon Winterstein because he had a rubber on. Nor is it styled State of Alabama versus Perez Pou because he's a crook. Perez Pou, according to the evidence, was in the County Jail and could have been brought over here to testify if Mr. Gale had but —
 "MR. GALE: Your Honor, I object. That's improper. He had just as much access to that witness.
"THE COURT: Overruled." (R. 271)
We must agree with the appellant that
 "It is the general rule that one party may not comment unfavorably on the other party's failure to produce a witness supposedly favorable to that party if the witness is equally available . . . or accessible to both sides. Waller v. State, 242 Ala. 1, 4 So.2d 911; Rueffert v. State, 46 Ala. App. 36, 237 So.2d 520; Kissic v. State, 266 Ala. 71, 94 So.2d 202; Morgan v. State, 49 Ala. App. 330, 272 So.2d 256, cert. den. 289 Ala. 747, 272 So.2d 261." (Emphasis added).
Garsed v. State, 50 Ala. App. 312, 317, 278 So.2d 761 (1973).
However, defense counsel made references concerning Perez Pou during his closing argument and we believe his remarks opened the door to any argument by the district attorney concerning Pou. The defense counsel's reference to Pou is set out below:
 "Let's talk about the wallet, the empty wallet, and the papers strewn there on the highway. He told you he threw the wallet out the window. If he threw the wallet out the window does it make sense that possibly some papers are going to scatter on the highway? What is the big commotion, the factual gymnastics over some papers scattering on the highway? What about the wallet being empty, and let's talk about reasonable doubt. Perez Pou found the wallet. If you want to believe Julie Norris that he saw some money in it and then threw it out the window, he never said he took any money, but let's assume there was money in there. Perez Pou found the wallet. Old Perez was down at the work release center because he'd been transferred there from Atmore or somewhere because he's a burglar. He got arrested again and was up at — in one of the other prisons up here for armed robbery. I asked Cookie Estes when he was on the stand, Is Perez Pou a thief? Yes, sir. Perez found the wallet. He didn't turn it in. They had to go get it from him and they were shocked because there wasn't anything in it. It wouldn't have shocked me. But let's talk in reasonable doubt, reasonable doubt. Are you convinced beyond a reasonable doubt that Perez Pou didn't take anything out of there if it was in there? Are you?" (R. 267-268).
Therefore, the district attorney's remarks were a reply in kind to the argument of defense counsel, and therefore do not violate the general rule that a party may not comment unfavorably on the other party's failure to call a witness equally available to both sides. See Stockard v. State,391 So.2d 1049 (Ala.Cr.App. 1979).
The trial judge did not err when he overruled the appellant's objections.
 II
Secondly, the appellant claims the trial judge erred by failing to define provocation *Page 1190 
during his oral charge and refusing to give appellant's written requested instruction concerning provocation.
We do not find any merit in this contention. The appellant claims Winterstein hit him with a stick and thereby provoked him to deliver certain blows to Winterstein which eventually caused his death. Self-defense is the appellant's plea and the trial judge sufficiently covered the subject of self-defense in his oral charge. The appellant was not substantially injured by the trial judge's refusal to define provocation, since he so extensively defined self-defense. Therefore, we find no error in the judge's charge to the jury as above noted.
The judgment of the trial court is due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur.
BOWEN, J., in result only.